† FULLER *versus* TABOR.

A dwellinghouse erected on the land of another, with the previous knowledge and consent of the owner of the land, remains the *personal* property of the builder.

And if so erected without such knowledge and consent of the owner of the land, his *subsequent* assent that it may remain, will make it equally personal property.

Of the evidence of a conversion in an action of trover.

ON EXCEPTIONS from *Nisi Prius*, RICE, J., presiding. TROVER for a wooden building.

The plaintiff introduced evidence tending to show that he sold to Moses B. Brown a shop for a certain sum which was to remain his until paid for. Brown moved it on to a piece of land and fitted it into a dwellinghouse and underpinned it, and lived there until he died. His widow occupied the same when this action was commenced. There was no evidence that it was ever paid for.

It appeared that Brown moved it upon land of one Hoxie without his knowledge or consent. After finding the house there, Hoxie notified him the land was his, but Brown said he bought it of Reed, and afterwards agreed with Hoxie to buy the land of him and pay three dollars for it, but died without doing so.

It also appeared, that the defendant had a deed of quitclaim of the land where the house stood, from Brown; and that plaintiff demanded the shop and house of defendant, who said he had bought it of Brown and got a deed of it, and should keep it; that Fuller could have a watch for it, but would not take it. About one hundred dollars worth of labor and materials had been added by Brown.

There was other evidence tending to show, that defendant had never in fact exercised any *actual* control over the house.

The presiding Judge instructed the jury, that if the building was put on Hoxie's land by Brown without his knowledge or consent, but when Hoxie was informed that the house was thus put upon his land he consented that it

might remain, it would be personal property and this form of action might be maintained; *that* the agreement by Hoxie to sell to Brown would not of itself be sufficient evidence of such consent by Hoxie; but that they might determine from the position of the parties, the circumstances of the case, together with the agreement testified to by Hoxie, whether he did give such consent.

The defendant requested instructions, "that taking a quitclaim deed of the building without taking possession of the land or house, or exercising any acts of control over it, *but leaving it in the possession of Brown,* was not a conversion, though there may have been a demand by plaintiff and a refusal by defendant to deliver, and that asserting a claim to the building, merely, *without having the possession,* is not an act of control over the property."

Which instructions were refused; but the Court instructed the jury that to entitle the plaintiff to recover, he must prove a conversion of the building by the defendant, as alleged in his writ; that conversion consisted in the exercise of dominion and control over property, inconsistent with, and in defiance of the rights of the true owner or party having the right of possession. That taking a quitclaim deed of the land and building and putting it on record would not, of itself, constitute a conversion; but they would look at all the evidence in the case, as well the taking and recording of the deed as the other acts and declarations of the defendant, and from the whole evidence determine whether he had, as matter of fact, converted the property to his own use.

The verdict was for plaintiff, and defendant excepted.

A motion was also filed to set aside the verdict as against the evidence in the case.

*H. W. Paine* and *A. Libby,* for defendant.

The house when placed on Hoxie's land and underpinned, without his consent, became real property. His consent that it might remain there, if afterwards given, was consistent with his right in it and would not make it personal property.

Fuller *v.* Tabor.

The request should have been complied with. *Fernald* v. *Chase,* 37 Maine, 289, and cases there cited; *Mattawam Co.* v. *Bentley & al.,* 13 Barb. S. C. 641; *Rand* v. *Sargent,* 23 Maine, 326.

*Bradbury & Morrill,* for plaintiff.

RICE, J. — The evidence in this case tended to show that the house in controversy had been placed upon the land of one Hoxie, without his knowledge or consent, by Brown, under whom the defendant claims title.

Hoxie, who was a witness, testified, "I did not know the house was there till some time after it was put there; can't say how long; the house was underpinned; I gave no consent for it to be put there. As soon as I saw it, I notified Brown that the land was mine. He said he bought it of Reed. I told him Reed owned only the eight rod strip east of it. Brown agreed to buy the land of me, and I agreed to sell it to him for three dollars; but he died without completing the trade."

The Court were requested to instruct the jury, "that if the building sued for had been attached to the land of Hoxie, or any other person, other than Brown, by being underpinned, without the consent of the owner of the land, prior to the alleged conversion, and remained so attached at the commencement of this suit, then this action cannot be maintained."

This instruction was given. But the Judge further instructed the jury, that if the building was put upon Hoxie's land by Brown, without his knowledge or consent, but when Hoxie was informed that the house was thus put upon his land, he consented that it might remain, it would be personal property, and this form of action might be maintained.

It is a rule, that things personal in their nature, but fitted and prepared to be used with real estate, and essential to its beneficial enjoyment, having been fixed to the realty, or used with it, and continuing to be so used, become parts of

the land, *accessione et destinatione,* and pass with it by deed of conveyance.    1 Greenl. Cruise, 46.

But an exception to this rule is admitted, when the parties previous to the annexation of things to the freehold have mutually agreed, that they shall not become parts of the realty, but shall remain the property of the person annexing them, or may be removed by him.    *Ibid.*

There can be no doubt that one may own a building standing on the land of another, with his consent, and may dispose of it, and it will be liable to attachment, the owner of the land interposing no claim.    *Ashmun* v. *Williams & al.* 8 Pick. 402.

The subsequent assent and ratification of Hoxie, with a full knowledge of all the facts, was equivalent to a prior agreement, and relates back to the time the house was put upon his land.

It would be absurd to hold that a man is *compelled* to become the owner of a house, against his will, simply because his neighbor, acting under a misapprehension as to the title, had placed it upon his land *without his knowledge* and consent.    Yet such would be the result of the doctrine contended for by the defendant.    The instruction was obviously right.

The instruction upon the point in relation to conversion is in strict accordance with well established legal principles, and we think the evidence reported authorized the finding of the jury.          *Exceptions and motion overruled.*

*Judgment on the verdict.*

TENNEY, J., did not sit in this case.