Smith & Co. v. McLean.

Reversed.

---

## SMITH & Co. v. McLEAN.

1. **Pleading:** EXHIBIT OF WRITTEN INSTRUMENT: EVIDENCE. The failure to set out in or attach to the petition in a replevin suit, either the original or a copy of a chattel mortgage, under which plaintiff claims the right of possession to the property, constitutes no objection to the introduction of the mortgage in evidence on the trial. The objection must be taken by demurrer, or it will be deemed waived. Rev., §§ 2676, 2678.

2. —— Whether, under § 2964, a different rule would not apply where the instrument constitutes the *cause of action*, within the meaning of said section, *quere*.

3. **Replevin:** DEMAND. Demand of possession before commencing an action of replevin need be made only in those cases where it is necessary to terminate the right of possession in defendant, and confer it

Smith & Co. v. McLean.

upon the plaintiff. Where both parties claim title, and the right of possession incident thereto, no demand is necessary.

4. Chattel mortgage: CONTRACT: LEX LOCI. A chattel mortgage, valid under the law of the State where made, will be so held by the courts of this State, not only as between the immediate parties to the instrument, but against third persons, if such would be the effect given to it under the laws of the State where executed.

5. —— POSSESSION BY MORTGAGOR: RECORDING ACT. Retention of possession by the mortgagor of personal property does not, under the laws of this State, nor of those of Kansas, which in this respect are similar, render the transaction fraudulent, where the mortgage is acknowledged and recorded. Nor is the rule raised by a recital in the mortgage, that the property is "sold and delivered" by the mortgagor.

6. —— CONSTRUCTIVE NOTICE: RECORD OF INSTRUMENT. The constructive notice imparted by the recording of a chattel mortgage is not confined to the county or State where the mortgage was executed, and the property then was, but extends to wherever the property may be removed.

7. —— DESCRIPTION: UNCERTAINTY. A description in a chattel mortgage which will enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property covered by it, is sufficient. Descriptions which have been held sufficient, instanced by BECK, J.

8. —— RULE APPLIED. The following description in a chattel mortgage, where the property was retained by the mortgagor, and afterward passed into the hands of his partner, who sold the same, was held sufficient to charge the purchaser. "Five freight wagons, and twenty-five yoke of cattle, being the train now in my possession."

9. New trial: CONFLICTING EVIDENCE. The action of the court below, in overruling a motion for a new trial, will not be disturbed where the evidence is conflicting.

*Appeal from Page District Court.*

FRIDAY, APRIL 17.

REPLEVIN for thirty-one head of work oxen. Plaintiffs claim title, and the right of possession of the property, under a chattel mortgage executed by one R. C. Dunham, October 7, 1865, to them, conveying five freight wagons, and twenty-five yoke of cattle, to secure to them an in-

debtedness of said Dunham of $1,750. The mortgage was executed in the city of Leavenworth, Kansas. The petition of plaintiffs sets out in full, the laws of the State of Kansas, governing the execution and registration of chattel mortgages. Defendant claims title, and the right of possession of said property under a purchase of the same from one Short, at Savannah, Missouri, who was a partner of Dunham in the ownership of said property, and had the right to sell the same to him. Verdict and judgment for plaintiff. Defendant appeals. The other facts will sufficiently appear in the opinion.

*J. R. Morledge* and *J. A. Harvey* for the appellants.

*M. B. Moore* and *Withrow & Wright* for the appellee.

BECK, J. — I. Neither the mortgage and notes executed by Dunham to plaintiffs, nor copies thereof, were

1. PLEADING: exhibit of written instrument: evidence.

filed with the petition; the introduction of these papers in evidence at the trial was objected to for that reason. The objection was overruled and the papers admitted in evidence. This is assigned for error, and in support thereof section 2920, of the Revision, is relied upon by the appellants' attorney. But the objection came too late. It could have been taken on demurrer (section 2876); but, not being so taken, it was deemed waived (§ 2878). It is presumed, that, if the petition contained matter which the defendant esteemed sufficient to enable him to answer, thereby admitting such sufficiency, it was adequate in all respects for the purposes of a trial. The issues having been found without any objection of this nature, it was too late to make it at the trial. *Farwell* v. *Tyler*, 5 Iowa, 535; *Kingsbury* v. *Buchanan*, 11 id. 387.

It would seem, that section 2964, to which, however, we have not been referred by appellant, would more

nearly support this objection than the other sections relied on, and which we have just considered. We confess that, in its construction, we are not free from doubt of the correctness of our conclusions. Yet the better opinion seems to be, that the mortgage is not in fact *the cause of action*, in the sense of the term, as used in that section. If this be correct, the instrument was properly admitted in evidence, though no copy was attached to the petition.

II. It is contended, that the action of replevin was improperly brought and sustained against defendant, because no demand of the property was made by plaintiffs, of the defendant. That defendant acquired possession of the property in good faith, by purchase of one to all appearances the owner, and that his possession was not therefore wrongful, and that this action cannot be sustained against him without proof of demand of the property.

2. REPLEVIN: demand.

It is hardly necessary to remark, that the action of replevin, under our Code of Procedure, being a statutory remedy, and our system of pleading being not that of the common law, the rules that govern this action, as well as the pleadings therein, are not those that are applicable to the action bearing the same name under the common law. The application of rules and reasons, drawn from authorities treating of the common law action of replevin, to this proceeding, under our system of procedure, will inevitably lead to erroneous conclusions.

Under our Code it is a remedy for the recovery of personal property, to which the plaintiff has the right of possession, or the ownership coupled with that right. The mist of no common law fictions obscures the proceedings in the action. As in the action at bar, the plaintiff alleges in his petition the facts constituting his right of possession of the property. If this right is based upon

the full ownership, he so avers. The answer of the defendant, by denial of the allegations of the petition, or the averment of proper matter of defense, puts in issue the plaintiff's right of possession or ownership of the property. If the defendant's right can only be terminated by a demand of the property, or plaintiff's right thereto depends upon such demand, the fact will appear in the pleadings, or will be drawn as a conclusion of law therefrom. Now, it is evident, that proof of demand of possession will be required at the trial, only in such cases where it is necessary to terminate the defendant's right of possession or confer on plaintiff that right. To require such proof in any other cases, would impose on one party a vain and useless labor, which the law will not exact. In the case at bar, the plaintiff claimed the ownership of the property and the right of possession as incident to that ownership; the defendant's claim was precisely the same, and thereupon was the contest to determine the question of ownership. No reason can be given why a demand should have been made; the act in no way could have affected the rights of either party; the law will, therefore, not require it.

At common law, the action was brought in two forms, viz., in the *detinuit* or *detinet*, the first for the wrongful taking, the second for the wrongful detaining of goods. The plea to the first was *non cepit*, to the second *non detinet*. These pleas did not put in issue the right of property or the right of possession of the goods, but simply the wrongful taking or detaining. 1 Chitty's Pleadings, 537; *Vose* v. *Hart*, 12 Ill. 378; *Anderson* v. *Talcott*, 1 Gilm. 371. When the pleas to the action are *non cepit* or *non detinet* only, a demand is held necessary, as in the cases last cited, because the right of property is admitted by the pleas to be in the plaintiff, and the issue is only as to the wrongful taking or detaining of the prop

erty. Hence, it is held, in order to charge the defendant with such wrongful taking or detaining, a demand must be proved. In order to put in issue the ownership of the goods, the defendant must plead property in himself or in a stranger. 1 Chitty's Pleadings, 481; *Anderson* v. *Talcott*, 1 Gilm. 371; *Vose* v. *Hart* 12 Ill. 378. In order to have a *retorno habendo* at common law, the defendant was required to traverse the place laid in the declaration, and avow or make cognizance, stating the cause for which he distrained the property. 1 Chitty's Pleadings, 537. When the property in the goods is put in issue by proper plea in bar, a demand is not necessary, for the simple reason, that the detention or taking is thereby admitted, but justified, because of the ownership of the goods by the defendant. But it is held, even where under a plea in bar the detention is in issue, it need not necessarily be proven by a demand; it may be proven in any other way, or any circumstances which go to satisfy the jury, that a demand would have been unavailing, may be shown to establish the detention. *Cranz* v. *Kroger*, 22 Ill. 74; *Johnson* v. *How et al.*, 2 Gilm. 345; *Hudson et al.* v. *Maze*, 3 Scam. 582. From these authorities it appears, that, even at common law, no demand is necessary where by the pleadings the defendant claims property in the goods. In *Johnson* v. *Howe et al.*, the absurdity of the rule, requiring proof of demand, is well and forcibly illustrated by Justice PURPLE, in the following pertinent remarks: "In trover the demand and refusal does not constitute the conversion. It is only evidence of it. But this is not the only evidence to prove a conversion in an action of trover, or an unlawful detention in an action of replevin. It could scarcely be insisted, that, if one to whom a horse had been loaned, instead of returning him according to contract, should attempt to run him from the country, and the first intelligence received by the owner

should be, that he was actually absconding with his property, such owner would be bound, before he could properly procure a writ of replevin upon which to retake the same, to follow and overtake the wrong-doer. and formally demand his property."

In *Hudson et al.* v. *Maze* (3 Scam. 582), the defendant was a mere bailee, claiming no right or title in himself to the property replevined.   While holding, that, under the facts of the case, a demand ought to have been proven, the court say :   " We would not wish to be understood as laying down a rule, that replevin would lie in no case of a lawful possession until demand.   If Maze, defendant, had held possession claiming right or title in himself, it might change the case.   But in this particular case, he was the mere gratuitous bailee without interest or charge, holding possession lawfully for the bailor, and, for aught that appears, ready and willing to deliver it to him who might show right.   It seems unjust to condemn him to costs, for a lawful act and gratuitous service."

*Stanchfield* v. *Palmer* (4 Green, 23), and *Gilchrist* v. *Moore* (7 Iowa, 10), are relied on to support the doctrine contended for by appellant's attorney.   In each of these cases it is ruled, that a demand is necessary.   But the pleadings in neither case are given; we cannot, therefore, determine, that, under the issues therein, a demand was not necessary under the rules we have just announced. In the last named case, we conclude, that the question of the ownership of the property in dispute was not in issue. In the first case, that question seems to have been in issue, but it is probable, that, on account of some peculiarity of the pleadings or facts, a demand was necessary. These cases cannot, therefore, determine this point.

III. It is claimed, that, admitting the mortgage to have been sufficient in form and filed for registration under the

Smith & Co. v. McLean.

4. CHATTEL
MORTGAGE:
contract:
*lex loci.*

law of Kansas, yet it is not operative, except as between the parties thereto, in this State. While it is admitted, that the *lex loci contractus* must govern as to the validity, nature and interpretation of a contract, yet, it is insisted, that it only controls as between the parties to the instrument.

If, under the laws of Kansas, the instrument was of sufficient form, and properly registered, whereby plaintiffs acquired an interest in, or lien upon, the property, a right, at a future time, upon the happening of any contingency, to acquire possession thereof, or qualified property therein, then by the comity governing the intercourse of States, the contract retains all its force and obligation, when the subject thereof, or the parties thereto, are before the courts of Iowa for adjudication of the rights of possession or ownership of the property. The enforcement of the contract, to the extent of its obligation and effect, cannot interfere with the policy of our laws, neither can it be in fraud of them, nor against good morals or public right. It is a contract, therefore, which, in a forum of this State, must be regarded of the same obligation and receive the same interpretation it would receive in the courts of Kansas. Story's Conflict of Laws, 366, § 240, *et seq.* ; *Arnold* v. *Potter*, 22 Iowa, 198 ; *Davis* v. *Bronson*, 6 id. 424 ; *Savary* v. *Savary*, 3 id. 272; *Bank of the United States* v. *Donnally*, 8 Pet. 361.

The argument based upon the hardships of this and similar cases fails to convince us, that justice and the interest of the people of this State require a modification of the rule, *lex loci contractus*, as contended for.

That there may be instances of innocent persons sustaining loss, as did the defendant in this case, in its application to instruments executed in another State, may readily be admitted; but these occasional instances of hardship are amply counterbalanced by the benefits

which the people of the State receive in the application of the rule in other States to contracts entered into here. We could illy afford to establish a precedent, disregarding and setting aside, in our administration of justice, those rules of comity which have heretofore been recognized by all civilized nations. It might return upon us with most mischievous results.

Neither are we able to admit the force of the argument of defendant's attorneys, whereby they attempt to establish the fraudulent character of the mortgage, as to third persons, by force of the fact, that the mortgagor was permitted to retain possession of the property mortgaged. The provisions of the laws of Kansas and our own statute concerning chattel mortgages, are similar in providing, that such instruments, when the possession of the property mortgaged is suffered to remain with the mortgagor, must be filed in the proper office. The fact, that the possession of the property is left with the mortgagor, does not render the transaction fraudulent; this is the very thing the statutes of both States provide for and authorize. But it is contended, that, inasmuch as the mortgage recites, that the property is "sold and delivered" by the mortgagor, and the property continues in the possession of the mortgagor, the transaction is, therefore, fraudulent as to third persons. But such would not be the result under our statute, and, as the Kansas statute is similar thereto, we see no reason why the same construction should not be put upon it.

Under the law of Kansas the instrument, when filed, was notice to the world of the lien or title of the mortgagee, though the property conveyed remained in possession of the mortgagor; we give it the same effect when the rights of parties secured by it are before us for adjudication. But it is argued, that the filing in Kansas practically cannot be notice to a

citizen of Iowa. This may be so, but the same argument would be just as true and forcible if the instrument were of record in some distant county of this State. A. makes a chattel mortgage of property to B.; both being residents of Alamakee county, the instrument is recorded there. A. removes the property to Fremont county, and sells it to one who has no actual knowledge of the mortgage, yet, the law charges him with constructive notice thereof, and he takes the property subject thereto. The filing in Alamakee county, for the purpose of imparting notice, would be no more effective practically, than a like filing in an equally remote county in Kansas. People may be often defrauded by purchasing stolen property; bankers and others, dealing in commercial paper, may often suffer loss by discounting bills in the hands of fraudulent holders, but such occurrences have never been considered sufficient to require a modification of the rules of law applicable to such transactions.

The following authorities sustain the doctrine, that a chattel mortgage, valid under the law of the State, where executed, will be so held by the courts of a sister State, to which the property may be removed. 2 Hilliard on Mortgages, 412; *Blystone* v. *Burgett*, 10 Indiana, 28; *Martin* v. *Hill*, 12 Barb. 633; *Barker et al.* v. *Stacy*, 25 Mississippi, 477; *Ryan* v. *Clanton*, 3 Strobhart, 413; *Offut* v. *Flagg*, 10 N. H. 50; *Ferguson* v. *Clifford*, 37 id. 87; *Jones* v. *Taylor*, 30 Vt. 42.

IV. It is urged, that the mortgage is void for uncertainty of description of the property conveyed, which is 7. —— descrip- in these words, namely: " five freight wagons, tion: uncer- and twenty-five yoke of cattle being the train tainty. now in my possession." It is contended, that, as this description is not such as would enable any one to identify the property, if it should not be in the mortgagor's hands, the instrument must therefore be void for that reason. It

cannot, with reason, be claimed, that a description of the property should be set out in the instrument, with such certainty, that it is capable of being identified by such description alone. It often happens that this cannot be done; certain kinds of personal property, that are frequently conveyed by such instruments, it would be impossible to so describe. It is true, that there must be certainty in the description of the property, but *id certum est quod certum reddi potest.* Hence, if, from the description contained in the instrument, the mind is directed to evidence whereby it may ascertain the precise things conveyed, if thereby absolute certainty may be attained, the instrument is valid. The rule may be stated in different words, thus: That description which will enable third persons, *aided by inquiries* which the instrument itself indicates and directs, to identify the property, is sufficient. *Lawrence* v. *Evarts,* 7 Ohio (N. S.) 194. The following descriptions have been held sufficient, viz.: "All and singular the stock, tools and chattels belonging to the mortgagor in and about the shop occupied by him;" "all the pine lumber in Whitman's millyard and pond, and all the manufactured lumber in and about said mill;" "all the property now in the shop occupied by me in," etc.; "all the goods, wares and merchandise in and about" a certain store; "all the stoves I have in Monterey, the same I had of M. F.;" "one ton of wire." 2 Hilliard on mortgage, 333, 334, §§ 1 to 9, and authorities cited. In some of the above cases the descriptions were not in fact accurate, as that the mortgagor had in fact no stoves in the town mentioned, but they were in another town, and the wire was 662 pounds more than a ton, yet the courts permitted the introduction of parol evidence to identify the property as that actually mortgaged. It has been held, that a mortgage of "ten horses" in the mortgagor's possession is not void for uncertainty of description, and that

Smith & Co. v. McLean.

the identity of the property could be proved by parol. *Eddy* v. *Caldwell*, 7 Minn. 225. So a mortgage of all the goods in a certain store, holds the goods though moved to another place. *Wheldon* v. *Wilson*, 44 Maine, 1. A mort gage conveying among other property "all other articles of personal property in and about Herbert Hall," was held to cover by that description, a family carriage belonging to the mortgagor, if on the premises known as Herbert Hall, at the time the mortgage was given. *Goulding* v. *Swett*, 13 Gray (Mass.) 517. Where a mortgage described two post coaches called "Stuben and Mayday at Hornellsville," parol evidence was admitted to show, that there was no coach at the place named called Stuben, and that a coach called Cowhocton, was intended to be included among the property conveyed by the mortgage. *Dodge* v. *Potter*, 18 Barb. 193. A mortgage of all the property "now in the shop occupied by me in B," though without date, is good, for parol evidence is admissible to show the date of its execution and delivery, and thereby to arrive at the property intended to be covered by the mortgage. *Burditt* v. *Hunt*, 25 Maine, 419. These cases are quite sufficient to illustrate the doctrine above announced, and to show that, applied to the case at bar, the mortgage must be held valid.

Considering the instructions given and refused by the court below in the light of the above doctrines, we find no error in the rulings thereon.

V. It is urged, that the court erred in overruling the motion for a new trial on the ground that the verdict was contrary to the evidence. We cannot say, that the verdict is not sustained by the evidence. Upon the points of the identity of the property replevied with that described in the mortgage, the existence of a partnership between Dunham and Short, at the time the mortgage was executed, the knowledge and acts

9. NEW TRIAL: conflicting evidence.

of Short, whereby he would be presumed to assent to the execution of the mortgage by Dunham, and estopped to deny its binding force upon the property, there was a conflict of evidence, though we think the preponderance was for plaintiff; at all events there is no cause to hold the verdict so contrary to the evidence as to require it to be disturbed.

Affirmed.