SHOEMAKER, MILLER & CO. v. WM. A. SIMPSON, *et al.*

1. PERSONALTY; *Where Attached to Land without Owner's Consent.* An owner of personal property cannot, against his will, be deprived of the title to such property by having it attached, without his consent, to the real estate of another, by a third person, where such personal property can be removed from such real estate without any great inconvenience, and without any substantial injury to the real estate.

2. REPLEVIN; *When Demand is Unnecessary.* Whenever one person obtains possession of the personal property of another without the consent of the owner, and then, without any right which the law will recognize, asserts a claim to the property inconsistent with the owner's right of property and right of possession, the possession of such person will immediately become illegal and wrongful, and no demand for the property will be required to be made by the owner before he commences an action of replevin for the recovery of the same, although the possessor thereof may ever so honestly entertain the belief that his claim to the property is both legal and just.

### *Error from Douglas District Court.*

REPLEVIN for 26 bars of railroad iron, brought by *Shoemaker, Miller & Co.* as plaintiffs, against *Wm. A. Simpson,* and two others. The opinion, *infra,* contains a full statement of the facts and proceedings. Trial by the court, without a jury, at the June Term 1871. Findings and judgment in favor of the defendants, and plaintiffs bring the case here for review.

*J. P. Usher,* for plaintiffs, submitted, that as the iron was not so affixed to defendants' freehold that it could not be re-

moved without injuring the freehold, and as it was not placed upon the premises by plaintiffs, or with their knowledge or consent, and as it had been removed by the defendants before the action was brought, the plaintiffs had not lost their right of property, nor their right to the possession. The whole law upon this subject is laid down in the American notes to the case of *Elwes v. Mawes,* 2 Smith's Leading Cases, 248, which establish the following propositions: 1st.–If a chattel is annexed to the freehold so as to become a part of the realty, it may be severed from the freehold and reinvested with the character of personal property by the act of the owner of the land. 2d.–The intention of the person by whom the annexation is effected is the paramount consideration; and if the intention was not to incorporate the article or structure permanently with the inheritance, but only for a temporary use, without regard to increasing the value of the land upon which the chattel is placed, and it can be removed without injury to the land, it is not a fixture, and may be removed by the owner; and if the removal is resisted he may bring trover or replevin for the article. 3d.–Although a chattel may have become a fixture, nevertheless, if it be afterward severed from the freehold it again becomes a chattel, and may be recovered in replevin by the rightful owner. 4th.–There must not only be an annexation to the freehold, but the thing annexed must be adapted to the purposes of the freehold; and unless both conditions unite, such chattel does not become incident and appurtenant to the real estate. If it is attached merely for a temporary purpose or the more complete enjoyment and use of it as a chattel, then it remains a chattel. *Hellaway v. Eastwood,* 6 Excheq. 295; *Voorhies v. Magennis,* 48 N. Y. 278; *Potter v. Cromwell,* 40 N. Y. 288; *Teaff v. Hewitt,* 1 Ohio St. 511; *Fryatt v. Sullivan,* 5 Hill, 116; 17 Vt. 533; 33 N. H. 66.

2. No demand was necessary, because, first, defendants' possession never was lawful, as they took by the act of a wrongdoer; and secondly, even had they been entitled to a previous demand, they have waived it by setting up title in

themselves. 10 Mich. 357; 3 Hill, 360; 20 Mich. 104; 35 Ill. 417; 21 Ark. 422; 34 Miss. 385; 24 Iowa, 322.

*Nelson Cobb, W. W. Nevison,* and *S. A. Riggs,* for defendants:

Chattels annexed to real estate become a part thereof, and the owner of the soil, by virtue of the annexation, becomes the owner of the fixture. "It is a maxim of great antiquity, that whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres, and partakes of all its incidents and properties. By the mere act of annexation, a personal chattel immediately becomes part and parcel of the freehold itself." "Every case in which there is a right of severing a thing from the freehold by virtue of the law of fixtures, is considered as an exception to this general rule." Amos & Ferrard on Fixtures, 9, 10; 6 Pacific Law Reporter, 62; 1 Central Law Journal, No. 11, page 124; 15 Ind. 142; 2 Kent's Com. 362, 363.

2. A railroad is real estate, and rails of iron laid down in the construction of the road are thereby changed to real estate. *Galveston Rld. Co. v. Cowdry,* 11 Wallace, 464, 482; *Hunt v. Bay State Iron Co.,* 97 Mass. 279; *Strickland v. Parker,* 54 Me. 263.

In Amos & Ferrard on Fixtures, page 13, it is said: "In Brooke's Abr., Tresp., it is laid down, that if a piece of timber that had been illegally taken from J. S. has been hewed, trespass does not lie against J. S. for retaking it; but if a piece of timber, which was illegally taken, have been used in building or repairing, this, although it is known to be the piece which was taken, cannot be retaken, the nature of the timber being changed, *for by annexing it to the freehold it became real property.*" Here there is no intimation that the timber might be removed if it could be done without injury to other parts of the realty. But the doctrine is put squarely on the ground that it is realty. The same authority, on the same page, says: "Other and more recent authorities afford some singular illustrations of the principle under consideration. In Lord Raymond, p. 738, is the following case:

"*Sparks v. Spicer,* (Mich., 10 Will. III;) Per HOLT, C. J. If a man be hung in chains upon my land; after the body is consumed, I shall have gibbet and chain. Said upon a motion for a new trial." These ancient authorities, we believe, have not been judicially controverted. And it is hardly credible that the gibbet and chain above mentioned, was intended as a permanent improvement to the realty on which it was erected. Nor is it credible in any case that a trespasser makes annexations with a view to improve the realty.

3. Nor did the disannexing of the iron by Simpson divest him of title thereto. There is no doctrine known to the law by which the owner loses title to real estate by converting it into personalty. If Simpson owned the iron as a part of the realty, he might use it as he chose without losing his title. Owning of the realty, which he owned in fee, he owned the iron by the same title; and such title implies an absolute right to use and dispose of it at will. 6 Gray, 536.

4. The possession by Simpson of the iron, even if he were not the owner, was in every view innocent, it having been placed upon his land in his possession without his agency. And where the possession of the defendant is innocent, a demand must always precede an action of replevin. Where one has acquired such possession without any unlawful act on his part, and holds it, honestly believing he has a right to hold it, it should be demanded of him before putting him to the cost of an action. And such we think is the great preponderance of authority. *Newman v. Jenne,* 47 Maine, 520; *Barrett v. Warren,* 3 Hill, 348; *White v. Brown,* 5 Lansing, 78.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin brought by Shoemaker, Miller & Co. against Wm. A. Simpson and others, for the recovery of twenty-six bars of railroad iron. The facts, stated briefly, are substantially as follows: Originally Shoemaker, Miller & Co. owned a large lot of railroad iron (including said twenty-six bars) at the state line, near

Statement of
the case. Wyandotte. They intended to use said iron in building a railroad, which they had previously agreed to build for the Kansas Pacific Railway Company, (then Union Pacific Railway Company, Eastern Division,) from Junction City, westwardly. They employed said Kansas Pacific Railway Company to transport said iron from the state line westwardly to the place where they expected to use it. At the same time William A. Simpson (one of the defendants) owned certain town lots in the city of Lawrence, on the north side of the Kansas river, and between the said river and the Kansas Pacific Railway. Previously a railroad track had been constructed across said lots from the Kansas Pacific Railway to said river. But at this time, the iron which had originally been put on said track had been removed therefrom, and only the road-bed and cross-ties then remained. About this time the Kansas Pacific Railway Company, or its agents, took said twenty-six bars of iron from the iron of Shoemaker, Miller & Co. at the state line, transported them to Lawrence, and then spiked them down on the said cross-ties on the lots of said William A. Simpson. This was done by the Kansas Pacific Railway Company, or its agents, for the temporary purpose of obtaining some ninety car-loads of sand from the Kansas river, and it was intended to remove said iron as soon as the sand was obtained. This was all done without the knowledge or consent of either Shoemaker, Miller & Co., or said Simpson. The railway company had however taken other iron from Shoemaker, Miller & Co. for which they subsequently settled, but the parties never settled for this particular iron, and Shoemaker, Miller & Co. objected to the railway company taking or using their iron in any such manner. Afterward, said Simpson through his agents removed said twenty-six bars of iron from his said lots, claiming the same to be his own. Shoemaker, Miller & Co. then commenced this action, and replevied said twenty-six bars of iron from said Simpson and his agents, the other defendants. The action was tried in the court below by the court without a jury. The court made separate and special

findings of fact and of law.   Upon these findings the court rendered judgment for the defendants and against the plaintiffs.

We think the court below erred.   We know of no way by which an innocent person can be permanently and legally deprived of his property against his will by the wrongs and trespasses of others, so long as it remains within the power of such innocent person to reclaim his property without committing any serious or substantial injury to the person or property of any other person.   In the present case the plaintiffs committed no wrong; and they never consented that their property should be taken from them, or used in the manner that it was used.   The railway company committed the first wrong by taking and using the property of the plaintiffs in the manner they did.   They committed a wrong against the plaintiffs by taking their iron without their leave, and also committed a wrong against the defendants by putting the iron on defendants' land without the defendants' leave.   But the defendants committed the second wrong by attempting to profit from the wrongs of the railway company, and by attempting to make the iron of innocent parties their own. And the wrong of the defendants was even greater than that of the railway company.   The railway company attempted to deprive the plaintiffs of their property temporarily only. But the defendants attempted to deprive the plaintiffs of their property forever.   But the wrongs of the railway company and the defendants, combined, can hardly cause the property of the plaintiffs to become the property of the defendants. The theory upon which the defendants claim that the property of the plaintiffs became their property is as follows: The said iron was spiked down to said cross-ties.   It then became a part of the realty; and as the defendants owned the realty, they therefore owned the iron.   And they further claim that the subsequent removal of the iron from said cross-ties did not have the effect to change the property back from themselves to the plaintiffs.   The whole question in this case

*1. Personal property: when it does, and when it does not, become part of the realty.*

therefore depends upon whether said twenty-six bars of iron became a part of the defendants' real estate as between the plaintiffs and the defendants.  If it did not become real estate at all, or if it did not become real estate as between the plaintiffs and defendants, then the plaintiffs must recover.  It being real estate as between the defendants and the railway company, or as between the defendants and every other person in the world except the plaintiffs, would not enable the defendants to recover.  Now we suppose, that where one person or one corporation owns both the road-bed of a railroad and the iron attached to it, the iron is unquestionably a part of the realty.  And where a trespasser, not owning the road-bed, attaches his own iron to the road-bed, the iron immediately becomes a part of the realty, and belongs to the owner of the road-bed.  But neither of these cases is the present case.  It is sometimes very difficult under the peculiar circumstances of a particular case to determine whether a particular thing is a part of the realty or not.  It does not depend upon one fact alone, but generally upon several facts.  And among these facts are those of attachment to the soil, the intention of the parties, and those facts which enter in to show where the equities and justice of the case are.  Even the nature and extent of the attachment have much weight in determining whether a given thing is a part of the realty or not.  Even a trespasser may place his personal property on the soil of another, where no connection exists, without it becoming real estate, or without it becoming the property of the owner of the soil.  While on the other hand, the owner of the soil might even steal the personal property of another, and so incorporate it into his real estate that it would become a part thereof, and could never be reclaimed by the owner.  And between these two extremes there are infinite degrees and modes of attachment and connection of various things with the soil.  Where the connection is slight, property is often considered personal property: whereas, if the connection were close and intimate it would be considered real estate. ˏ But the other facts have a con-

trolling influence in determining whether a given thing is a part of the realty or not. A key to the door of a house is a fixture, and a part of the realty, although at the time it may not be at or near the premises to which it belongs. While on the other hand, annual crops, and a nursery of young trees raised for sale, may not be a part of the realty, but only chattels, although most firmly and intimately attached to the very soil itself. Even dwelling-houses, or indeed anything placed by men upon the soil, if they can be again removed, either in bulk or in pieces, may under some circumstances be only chattels, although they may be ever so firmly attached to the soil. The intention of the parties is one of the strongest elements in determining questions of this kind. This is often exemplified as between landlord and tenant, but it is not confined to them. *Haven v. Emery,* 33 N. H. 66; *Dame v. Dame,* 38 N. H. 429; *Hunt v. Bay State Iron Co.,* 97 Mass. 279; *Wagner v. C. & T. Rld. Co.,* 22 Ohio St. 563; *Hines v. Ament,* 43 Mo. 298; *Fuller v. Tabor,* 39 Me. 519. And so have equitable considerations a strong influence in determining questions of this kind. In equity, money is often considered as land, and land as money. In Wisconsin it has been held, "that where rails have been placed along the line of an intended fence for the purpose of being laid into the fence, though not actually applied to that use, they pass by a deed of the land, there having been a manifest appropriation to the use of the land." (*Conklin v. Parsons,* 1 Chandler, 240, 244.) While in Missouri it has been held that where a fence was put on another's land, through a mistake of the boundary lines, the fence remained the personal property of the person who put it there. (*Hines v. Ament,* 43 Mo. 298. See also, *Fuller v. Tabor,* 39 Me. 519.) The Wisconsin and Missouri decisions are probably both correct. In the present case the connection between the iron and the real estate to which it was attached is not very close or intimate. The iron may be removed without substantial injury to either the iron or the real estate. And railroad iron, fastened down to the road-bed, as this was, does not necessarily

become a part of the real estate. It may remain personal property. (*Hunt v. Bay State Iron Co.*, 97 Mass. 279; *Haven v. Emery*, 38 N. H. 66.) It was never the intention of the plaintiffs that this iron should become a part of the defendants' real estate. Indeed, no person ever had any such intention except the defendants themselves. The plaintiffs never intended to give this iron to the defendants. They never intended to abandon it to any person who might take possession of it. They never committed any trespass or wrong toward the defendants. And it would be against justice and equity to deprive them of their property. The defendants seem to specially rely upon the case of *Sparks v. Spicer*, 1 Lord Raymond, 738. This case was decided one hundred and seventy-eight years ago. The entire report of the case reads as follows: "SPARKS *vers.* SPICER; Mich.: 10 Will. III.; Per Holt, Chief Justice. If a man be hung in chains upon my land; after the body is consumed, I shall have gibbet and chain. Said upon a motion for a new trial." Now the gibbet and chains probably belonged originally to the county, or the public; and it is probable that when a man was hung, the public never intended to reclaim the gibbet and chains, but intended to wholly abandon them to the owner of the land. This may have been so by special statute, or by special custom; and in either case it would prove nothing for the defendants. The report of the case certainly does not pretend to promulgate the doctrine, or even intimate, that the gibbet and chains would become real estate. The report does not show whether the consent of the owner of the land that the man might be hung on his land, should first be obtained, or not; but in any case, the putting of the gibbet and chains on the land would be the voluntary act of the owner of the gibbet and chains, through its agents, the public officers, and therefore such owner should abide the consequences of its own acts, whatever they might be. A wrongdoer may lose his personal property by voluntarily attaching it to the land of another. A person not a wrong-doer, may, by his own consent, lose his personal property by

attaching it or allowing it to be attached to the land of another. A person may even lose his personal property by wholly abandoning it to any person who may pick it up, although it may never be attached to any person's real estate. And an innocent person may sometimes against his consent lose his personal property by the same being incorporated into the real estate of some other person, so that it cannot be separated without great inconvenience and loss. But we do not think that any innocent person can be deprived of the title to his personal property against his consent by having it attached without his consent to the real estate of another by a third person, where such personal property can be removed without any great inconvenience, and without any substantial injury to the real estate.

There is one other question involved in this case, presented by the defendants for our consideration. The plaintiffs did not make any demand for the property in controversy before they commenced this action; and the defendants now claim 2. When demand that because of such want of demand the plain-
is necessary. tiffs cannot maintain their action. Now, a demand of the property before commencing an action of replevin is necessary only where the possession of the property by the defendant is rightful, or at least not wrongful, and where a demand is required to terminate such rightful possession, or to convert what was previously an innocent possession into a wrongful one. A demand never was necessary in a replevin action where the possession of the property by the defendant was already wrongful without a demand. And all that is necessary to make the possession of the property of another wrongful in law, is, that the possession be without the authority of the owner, and inconsistent with his rights. We think it may be laid down as a rule, that whenever one person obtains the possession of the personal property of another without the consent of the owner, and then without any right which the law will recognize, asserts a claim to the property inconsistent with the owner's right of property and right of possession, the possession of such person will immediately

become illegal and wrongful, and no demand for the property will be required to be made by the owner before he commences an action of replevin for the recovery of the same, although the possessor thereof may ever so honestly entertain the belief that his claim to the property is both legal and just. An innocent owner of property is not to be subject to additional inconveniences and burdens, merely because some other person may be innocent and ignorant. The innocence and ignorance of the person in possession of another's property cannot in any manner abridge the legal rights of the owner thereof. The owner of property who has the present and existing right of possession is not to be postponed on account of the ignorance or innocence of some other person who claims adversely to him. Nor is such owner, if he commences an action of replevin for his property, bound to tender an issue, or to litigate a question, founded merely upon the ignorance and innocence of the party who claims adversely to him. These views we think are sustained by the great weight of authority: *Trudo v. Anderson*, 10 Mich. 357; *Ballou v. O'Brien*, 20 Mich. 304; *Clark v. Lewis*, 35 Ill. 417; *McNeill v. Arnold*, 17 Ark. 155; *McDonald v. Smith*, 21 Ark. 422; *Galvin v. Bacon*, 11 Me. 28; *Newell v. Newell*, 34 Miss. 386; *Smith v. McLean*, 24 Iowa, 322. The last two cases decide that a defendant, by pleading title in himself, waives any right that he might otherwise have to claim that a previous demand should have been made for the property. Of course, replevin could not be maintained against a person who came innocently into the possession of the property, who never claimed any interest in the same, and who never disputed the owner's right thereto. But if sued he should disclaim, and not set up title and right of possession in himself, as the defendants did in this case. With respect to the question of a necessity for a demand, where the defendant has come into the possession of the property with the consent of the owner, and then wrongfully claims the property as his own, we have not expressed any opinion, and shall not do so in this case. In the present case the defendants did not come into the pos-

session of the property with the consent of the owners; and after they got possession of it they claimed it as their own; and after this suit was commenced they set up in their answer an affirmative claim of title and right of possession in themselves; and they obtained a judgment to that effect in the court below. We think no demand was necessary in this case. Or at least we think there was no necessity for the plaintiffs, on the trial, to show by evidence that a demand was made for the property by the plaintiffs before the suit was commenced.

*The judgment of the court below will be reversed, and cause remanded with the order that judgment be rendered on the findings of the court below in favor of the plaintiffs, and against the defendants.

All the Justices concurring.