IOWA SAVINGS BANK v. DUNNING & HARTSON.

FILED JUNE 29, 1893.   No. 4430.

1. **Chattel Mortgages**: DESCRIPTION OF PROPERTY: BONA FIDE PURCHASERS: CONSTRUCTIVE NOTICE. A description of property covered by a chattel mortgage which will not enable third persons, aided by inquiries which the mortgage itself suggests, to identify the mortgaged property is not constructive notice to good faith purchasers thereof for a valuable consideration.

2. ———: ———: IDENTIFICATION: QUESTION FOR JURY. Whether the description of property in a chattel mortgage and the other inquiries which the mortgage itself suggests are sufficient to enable third persons to identify the mortgaged property is a question of fact for the jury.

ERROR from the district court of Saunders county. Tried below before MARSHALL, J.

*Jay Bros.* and *Simpson & Sornborger*, for plaintiff in error.

*George I. Wright, contra.*

RAGAN, C.

This is a suit brought by the Iowa Savings Bank against Dunning & Hartson in the district court of Saunders county for "possession of one hundred and seventy-eight two and three year old steers, marked with an inverted 'V' cut in the ear." The bank claims these steers by virtue of two chattel mortgages made by one Jackson to one Wheeler, and by the latter assigned, together with the evidences of debt which they were given to secure, to the bank. There was a verdict and judgment for Dunning & Hartson, and the bank brings the case here and assigns for error that the verdict is not supported by the evidence, and that the court erred in certain instructions given to the jury.

As to whether the verdict is supported by the evidence, it appears in September, 1889, Wheeler sold two lots of cattle to Jackson and to secure a part of the purchase money, took from him notes and the mortgages above mentioned on the cattle sold. The cattle were described in the mortgages as follows: (*a.*) "Ninety head two and three-year-old steers in spring of 1880, marked <> (diamond) hole in right ear; branded 'C' on right hip." (*b.*) "Ninety-eight head three-year-old steers, marked <> (diamond) hole in the left ear; also branded 'C' on right hip." The mortgages were duly recorded in Stanton county, one on the 20th day of March and the other on the 30th day of April, 1889. It is not pretended that any of the cattle replevied in this suit were branded with the letter "C." The cattle

sold by Wheeler to Jackson were not thus branded, but the evidence shows that Jackson promised at the time of their purchase that he would so brand them. There was evidence on the part of the bank that the steers sold by Wheeler to Jackson were at the time marked with a diamond-shaped hole in the ear; and there was evidence at the trial to the effect that the ears of some of the cattle replevied still had this diamond-shaped mark, though partly obliterated by a cut made in the ear, and some of the witnesses for the bank identified some of the cattle replevied as the same cattle covered by the mortgages. On the other hand, there was evidence for Dunning & Hartson that they bought the cattle in controversy out of a herd of some six hundred from a man named Abrams, in whose possession they were; that the purchase was in good faith for a valuable consideration, without any knowledge, either actual or constructive, of the existence of the mortgages, and without knowledge or notice of any fact or circumstance to put them on inquiry as to the mortgages; that the cattle in suit were none of them marked with a diamond-shaped hole in the ear; none of them branded with the letter " C," and all distinctly marked by a " swallowfork" in the ear, and that they were not the cattle sold by Wheeler to Jackson. Abrams, the vendor of the defendants, was a witness and testified that all of the cattle replevied were cattle he sold to the defendants and that he purchased some of these cattle from the Sioux City stock yards, some from a cattle dealer named Hall in Minnesota, and some of them from Jackson, and that none of the cattle bought by him of Jackson, or of the other parties, or sold by him to Dunning & Hartson had any diamond or other mark in their ears, but that all his herd, some six hundred, except one hundred and seventy-five big cattle, were marked by a "swallowfork" in the ear. Dunning, who bought the cattle, swears all the cattle bought by him of Abrams were "swallowforked" and "not a critter in the bunch" that

had a diamond hole in its ear, or any indication of there ever having been one.

There were some sixteen witnesses in the case and all of equal credibility so far as we know. The important question in the case was whether the cattle replevied were the ones covered by the mortgages, a question of identity. The bank claimed and made a vigorous effort to show they were. The defendants as vigorously protested they were not. There is sufficient evidence in the record to sustain a finding either way. This is a case that demonstrates the wisdom of our fathers in providing a jury for the determining of disputed questions of fact. The men of that tribunal heard all these witnesses; had the opportunity to observe them and their conduct while on the stand, and after several and careful readings of all the evidence, we certainly cannot say that the verdict was wrong.

The instructions given by the trial court and excepted to by the bank are as follows:

" 1. If you find that the steers found in defendants' pasture are the steers mortgaged to Wheeler in Pender, as already explained, you will proceed to consider the other questions submitted to you. If you do not so find, or if the preponderance is with the defendants, or if the testimony is evenly balanced upon that question, you will return a verdict for the defendants, and need not, in that case, consider the other questions submitted.

"2. The mortgages introduced in evidence are both in due form of law, and were filed in due form, and are sufficient to entitle plaintiff to the possession of the steers in controversy, as against said Jackson. It does not follow, however, that plaintiff is entitled to the possession of said steers, as against the defendants Dunning & Hartson, even should you find that they are the identical steers sold by Wheeler to said Jackson.

"3. If you find that the description in the mortgage is sufficient to put the defendants on inquiry, and put them in

the way of learning the truth about plaintiff's mortgage, you will have to find for the plaintiff. If you do not so find, and if you further find that defendants are purchasers in good faith, as explained hereafter, you will find for the defendants.

"4. If you find that the description of the steers in the mortgage is not sufficient to put a purchaser upon his guard, and to lead him to a knowledge of the rights of the plaintiff, as already explained, and that the defendants bought and paid for the said steers in good faith, without any knowledge or information that they had been mortgaged to Wheeler, then you are charged that they would acquire a complete title to said steers and should recover in this action."

These instructions were applicable to the evidence and stated the law correctly.

The authorities cited by the learned counsel for plaintiff in error are not to the point. The cattle in question were not obtained from Wheeler by fraud. If the cattle replevied were the ones covered by the mortgages, the question still remained whether the defendants were innocent purchasers of them.

The contention of the plaintiff in error is that, conceding the cattle replevied to be the same cattle covered by the mortgages, any further inquiry was immaterial. This is not the law as applied to the facts of this case. The cattle were described in the mortgages " steers marked <> (diamond) hole in the left ear ; also branded 'C' on the right hip." It was conceded the cattle covered by the mortgages were not branded at all. There were two defenses made on the trial, one that the cattle replevied were not the cattle mortgaged ; and the other that if they were, defendants were innocent purchasers for a valuable consideration without actual or constructive notice of the mortgage; that when they purchased they were in possession of no fact or circumstance which, aided by all the *indices* afforded

by the mortgages, were sufficient to put them on inquiry or enable them to identify the cattle as the ones covered by these mortgages.

The defendants introduced much evidence, as above stated, in support of both their defenses. The charge of the trial judge, which included the instructions complained of, was not only correct, but a model statement of the law applicable to all the phases of the case.

The logical result of counsel's proposition is that no description of the subject-matter of a chattel mortgage is necessary; that is to say, no one can acquire title to a mortgaged chattel as against the mortgagee thereof, no matter under what circumstances he may purchase the chattel, or what its description may be in the mortgage. The description of the cattle in these mortgages was not only not constructive notice to a purchaser of the cattle that they were covered by these mortgages, but evidence that the cattle purchased were not the ones mortgaged. The description of the property covered by a chattel mortgage which will not enable third persons, aided by inquiries which the mortgage itself affords to identify the mortgaged property, is not constructive notice to a good faith purchaser thereof for a valuable consideration. (*Smith v. Mc-Lean*, 24 Ia., 322; *Rowley v. Bartholemew*, 37 Id., 374.)

There is no error in the proceedings of the district court, either in the instructions or in the admission of testimony, and the judgment is in all things

AFFIRMED.

THE other commissioners concur.