28959.   BURPEE *v.* ATHENS PRODUCTION CREDIT ASSOCIATION.

DECIDED JUNE 10, 1941.

*Rupert A. Brown,* for plaintiff in error.

*T'olnas & Middlebrooks,* contra.

MACINTYRE, J. A suit was brought for a certain furnace and appliances described as follows: "One Sunbeam No. 24 Steel Furnace of the value of $240.00, and one Stokol Stoker Model No. DF 12463-2, of the value of $245.00, which are in the possession, custody, and control of said defendants as hereinafter set forth. Said property has not lost its identity, and can be identified by name and number indelibly impressed thereon." The right of re-

covery, relatively to the question here raised, was based on the allegations of the petition which in effect stated that one Driver borrowed money from the plaintiff. To secure the loan Driver gave the plaintiff a security deed to certain land of his in Oconee County, Georgia, which deed described only the land. On the land was a house to which were attached the furnace and appliances in question in the following manner: "Said furnace was installed in a pit or basement excavated under said house for the same, and connected to said dwelling by piping or flues extending through the floors and basement of the dwelling where openings had been sawed and covered with gratings. The stoker was installed on the floor of said basement, and the burner thereof extended into the furnace by removing the grates and removing the ashpit door therefrom, the burner being slipped in the ashpit door and secured in the furnace, the space around the burner-box at the ashpit door being sealed by placing around the furnace-box brick and mortar." No mention was made in the security deed of the house or the furnace. Driver remained in possession of the property, and while still in such possession he detached and removed the furnace and appliances from said house in Oconee County to another house on land owned by him in fee simple and located in Clarke County, without the consent of the plaintiff. After removing the furnace and appliances and attaching them in like manner to the house in Clarke County, he sold this house and land to the defendant. In this deed no mention was made of the furnace. Driver was in default in payment of the note secured by the land in Oconee County described in the security deed. The plaintiff foreclosed the security deed under power of sale therein, and purchased said land for himself at public outcry. The proceeds of the sale were insufficient to pay off Driver's indebtedness to the plaintiff. The plaintiff obtained a deficiency judgment against Driver, and then brought the present suit against the defendant for the furnace and appliances. To the petition, the material portions of which are set out above, the defendant filed a general demurrer, and contends that the court erred in not sustaining it on the ground that "no cause of action was set forth in the petition, for at least two reasons: First, the furnace and stoker never became real estate so as to pass under the security deeds held by the defendant in error [plaintiff]. Second, if these articles did become real estate, the record of the security

deeds conveying land in Oconee County, Georgia, was not constructive notice to the plaintiff in error, when he purchased real estate in Clarke County, Georgia, of any claim that Athens Production Credit Association [plaintiff] had in and to the furnace and stoker." The overruling of the demurrer is the error complained of.

Mr. H. A. Bronson in his Treatise on the Law of Fixtures (published in 1904) states (page 7) : "There are three ways by which the term 'fixtures' may be defined: First, it may be considered as applying only to those chattels that have become so annexed to the realty as to be a part thereof, and consequently not removable against the will of the owner of the realty; second, it may be applied only to those chattels which, though annexed to the soil, may be severed and removed at the option of the one who annexed them; third, the term 'fixtures' may be deemed to embrace all those chattels which, by reason of their annexation to the land, partake both of the nature of personalty and realty, irrespective of the question whether they are removable or not." The writer of this opinion, as does Mr. Bronson, prefers the third definition of "fixtures" which defines the term in a generic sense and includes within its scope both removable and irremovable fixtures. The Supreme Court of California has given a definition which, according to Mr. Bronson, includes all the component elements of a "fixture," as follows: "Fixtures are chattels or articles of a personal nature which have been affixed to the land in such a way as not to lose their identity." Merritt v. Judd, 14 Cal. 64. Mr. Bronson says that this definition is in accordance with the derivative meaning of a fixture, which, from the Latin *affixum,* meant "a thing attached to or fastened to." Bronson on Fixtures, 5, § 1. Hence such a definition includes within its scope chattels which are attached physically or constructively to the realty, whether they be removable or not, and which do not lose their identity. This third definition the writer prefers, and thinks is not in conflict with the definition of "fixtures" in our Code, § 85-105, as follows: "Fixtures.—Anything intended to remain permanently in its place, though not actually attached to the land, such as a rail fence, is a part of the realty and passes with it. Machinery not actually attached, but movable at pleasure, is not a part of the realty. Anything detached from the realty becomes personalty instantly on be-

ing so detached." It is likewise in accord with § 85-201, which declares, in part: "Realty or real estate includes all lands and the buildings thereon, and all things permanenty attached to either [irremovable fixtures whether physically or constructively attached], or any interest therein or issuing out of or dependent thereon." Indeed this definition preferred by Bronson seems to the writer to be in accord with the decisions of our Supreme Court in *McCall* v. *Walter,* 71 *Ga.* 287, 290, and *Wolff* v. *Sampson,* 123 *Ga.* 400, 402 (51 S. E. 335). In the *Wolff* case it was stated: "Whether an article of personalty connected with or attached to realty becomes a part of the realty, and therefore such a fixture that it can not be removed therefrom, depends upon the circumstances under which the article was placed upon the realty, the uses to which it is adapted, and the parties who are at issue as to whether such an article is realty or detachable personalty." Under the third definition, a chattel is made to partake of the nature of both personalty and realty, depending on the way in which it is affixed or attached to the realty and the circumstances under which it is attached, and the parties at issue; and thus chattels which are attached to realty may partake to some extent of the incidents peculiar to personalty, and in other incidents may partake of the nature and characteristics of realty, and it is primarily because of the dual character of chattels so attached under varying circumstances (as not to lose their identity) that a reason exists for a distinct term by which such chattels may be designated as "fixtures," to distinguish them on the one hand from mere personal property and on the other hand from mere realty.

The writer thinks that if we should adopt the third definition quoted above, we would have a separate nomenclature for chattels or personal property that do not lose their identity when attached to realty, whether under an agreement or under the circumstances and conditions which they are attached they are removable, or whether they are so attached to the realty as to become a part thereof and irremovable. Furthermore, under such a definition, the separate nomenclature "fixtures" would help us to determine between things attached to the realty which do not lose their identity—"fixtures"—and personal property or things incorporated into the realty, such as nails, brick, lumber, door-locks and the like, which, when used in the construction of a house, lose their identity

as separate things, and their individual existence is so completely merged into the house that they are not included in the separated nomenclature of "fixtures." "It is a maxim of great antiquity, that whatsoever is fixed to the realty is thereby made a part of the realty to which it adheres, and partakes of all its incidents and properties. By the mere act of annexation, a personal chattel immediately becomes part and parcel of the freehold itself. Every case in which there is a right of severing a thing from the freehold by virtue of the law of fixtures, is considered as an exception to this general rule." Shoemaker v. Simpson, 16 Kan. 43, 45, and cit. See note in 14 L. R. A. (N. S.) 435. Instead of adhering too strictly to this ancient maxim, or restricting the nomenclature of fixtures to articles or chattels which, although they retain their identity are so annexed to the realty as to become a part thereof in contradistinction to the term removable fixture, or even if we should only keep in mind the said third definition which seems to conform to our Code, §§ 85-105, 85-201, supra, it would assist us in distinguishing cases both in this State and elsewhere which might otherwise confuse us as appearing to be in conflict. We might also avoid the danger, real or apparent, of being forced, on account of the ever-increasing complexity of the relationships of articles or chattels to real estate when attached thereto, to increase the exceptions to the general rule to such an extent that the cases arising under the exceptions would outnumber those arising under the general rule.

An innocent owner is not to be deprived of his property merely because some other person may be the purchaser thereof, innocent or ignorant of the plaintiff's ownership. The plaintiff here did not part with possession or title to the furnace and appliances which, while attached to the property in Oconee County in the manner and under the circumstances described in the petition, were in contemplation of law, as between the plaintiff and Driver, "irremovable fixtures," a part of the realty (Atlanta Gas-Light Co. v. Farrell, 190 Ga. 437, 9 S. E. 2d, 625), and when detached by Driver they then and there became the personal property of the plaintiff. Nor does the fact that Driver, the wrong-doer, took the plaintiff's property and attached it to another house (which belonged to Driver in fee simple, located in Clarke County) make it, as between the plaintiff and Driver, an "irremovable fixture;" for the furnace, when

detached, became personalty and retained its identity, and could have been removed in like manner from the second house without any great inconvenience and without material injury to the real estate of Driver in Clarke County (which was sold to the defendant), it never having been the intention of the plaintiff that his personal property should be attached to the real estate of Driver in Clarke County. Michigan Mutual Life Insurance Co. *v*. Cronk, 93 Mich. 49 (52 N. W. 1035). Thus, on an issue between Driver and the plaintiff, the personal property of the plaintiff when attached to the real estate of Driver in Clarke County, had not become the real property of Driver, but as to the plaintiff it was a "removable fixture," and the plaintiff could have recovered it from Driver. *Brooks* v. *John Hancock Mutual Life Insurance Co.,* 36 *Ga. App.* 261 (136 S. E. 166); *Logan* v. *Greer,* 36 *Ga. App.* 200 (136 S. E. 165). The fact that Driver attached the plaintiff's furnace to, and then sold, the house in Clarke County to an innocent purchaser, the defendant, does not deprive the plaintiff of its property or estop it from asserting its right to it as against the defendant. That some other person who claims adversely to the plaintiff was an innocent purchaser from a person who wrongfully severed and carried away the property to which the plaintiff had legal title (Code, § 67-1301) does not deprive the plaintiff of its property. Before the severance of the furnace from the real estate in Oconee County the plaintiff had recorded its security deed to the same as required by our statutes; and nothing appears which we think would estop the plaintiff to assert his right to the furnace in question.

Whatever was the intention of the wrong-doer, Driver (who severed the property), and the defendant, it was never the intention of the plaintiff that its personal property (which had become such by severance) should become a part of the wrong-doer's real estate to which it was removed and affixed, which real estate was subsequently sold to the defendant, nor was it the intention of the plaintiff that this chattel (the detached furnace) be attached to or become a part of the real estate of any other person; and even if, as between Driver, the wrong-doer, and the defendant, the furnace became realty or an "irremovable fixture" on account of his voluntarily attaching it to the property he sold to the defendant, and the other attendant circumstances, nevertheless it did not become an

"irremovable fixture" or realty as between the plaintiff and the defendant who purchased from the wrong-doer who had no title to the furnace. "A wrong-doer may lose his personal property by voluntarily attaching it to the land of another. A person not a wrong-doer may, by his own consent, lose his personal property by attaching it or allowing it to be attached to the land of another. . . And an innocent person may sometimes against his consent lose his personal property by the same being incorporated into the real estate of some other person, so that it can not be separated without great inconvenience and loss [such as the lumber and nails and brick incorporated in a building]. But we do not think that any innocent person can be deprived of the title to his personal property against his consent by having it attached without his consent to the real estate of another by a third person, where such personal property can be removed without any great inconvenience, and without any substantial injury to the real estate." (Brackets ours.) Shoemaker v. Simpson, supra. "As between grantor and grantee, the strict rule of the common law prevails, that, in the absence of an agreement to the contrary, all fixtures, whether actually or constructively annexed to the realty, pass by a conveyance of the freehold." *Wolff* v. *Sampson,* supra. If the personal property of the plaintiff (the severed furnace and appliances) when attached to other land of the grantor in another county did not become "irremovable fixtures" or a part of the real estate as between the grantee in the security deed, the plaintiff (which had legal title thereto) and the grantor Driver (who wrongfully severed it from such realty), or the defendant (the innocent purchaser from Driver the wrong-doer), then the plaintiff may recover, even if they were "irremovable fixtures" or real estate as between Driver, the wrong-doer, and the defendant. *Woods* v. *McCall,* 67 *Ga.* 506; *Kennedy* v. *Smith,* 149 *Ga.* 61 (99 S. E. 27); *Blain* v. *Corbin,* 51 *Ga. App.* 472 (180 S. E. 854). Assuming, for the purpose of demurrer, that the allegations in the petition are true, the plaintiff, not having parted with title to the furnace and appliances, and not having done anything to estop it from recovering its property from a purchaser in good faith, may sue and recover its property even from an innocent purchaser in good faith. This is the same principle ordinarily applied which enables the owner to recover stolen property even from an innocent purchaser. The innocent purchaser's

remedy is against the wrong-doer. *Fulton National Bank* v. *Moody,* 51 *Ga. App.* 179, 191 (179 S. E. 831).

The plaintiff in error lays stress on *Federal Land Bank of Columbia* v. *Saint Clair Lumber Co.,* 58 *Ga. App.* 532, 537 (199 S. E. 327). That case involved timber cut from the land conveyed by security deed, and counsel there cited cases relating to fixtures as applicable to the case. The court said: "All of the cases cited by counsel for the plaintiff . . deal with the right of a title-holder to recover fixtures which had been removed from land, and are not in point. A different rule of law applies as to the cutting of timber from land conveyed as security for a loan, the right of the grantor being determined by a consideration of whether or not such cutting impairs the grantee's security." This court approved the following statement: "It is a matter of common knowledge and well-nigh universal practice in this State that transactions in realty containing valuable timber or mineral deposits are made upon the understanding, either expressly stated in the course of the negotiations leading up to the sale, or tacitly so understood, that the purchaser will be able to pay the purchase-price, in large measure, by a conversion of these natural resources into money." That decision is not here applicable. The court properly overruled the demurrer.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*