## THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. D. C. EVANS *et al.*

RAILROAD BONDS — *Election — Contest — Parties.* In a proceeding brought by an elector, under chapter 79 of the Laws of 1871, to contest an election held for the purpose of voting the bonds of a county to aid in the construction of a railroad, and to be issued in payment for the stock of the railroad company, the plaintiff must conform strictly with the provisions of that statute, and cannot bring anyone in as a defendant, or proceed against any person other than the officers named in the statute, nor can any matter be litigated in such special proceeding except the mere question of contesting the validity of such election.

### *Error from Chase District Court.*

THE opinion states the nature of the action, and the material facts. Trial at the June term, 1888, and judgment for plaintiff *Evans.* The defendant *Railroad Company* brings the case to this court.

*Geo. R. Peck, A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.

*Madden Bros.,* and *Waters, Chase & Tillotson,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding to contest an election held in Chase county on November 16, 1886, for the voting of county bonds to be used in paying for stock of the Chicago,

Kansas & Western Railroad Company, and in aid of the construction of the railroad of that company in Chase county. It was brought by D. C. Evans, an elector of the county, against the board of county commissioners and the county clerk of Chase county, under the provisions of chapter 79 of the Laws of 1871. The petition which he filed substantially alleged that a petition signed by a number of persons was presented to the board of county commissioners of Chase county on October 12, 1886, requesting that an election be called to submit to the voters a proposition to subscribe for $80,000 of the capital stock of the Chicago, Kansas & Western Railroad Company; that the board of county commissioners in session duly convened, found that the petition was signed by 657 persons, who constituted more than two-fifths of the resident tax-payers of that county, and thereupon ordered an election to be held on November 16, 1886, as prayed for in the petition; that due notice was given of this election, and that afterward the election was duly had, and a canvass made of the returns of this election, and the board of county commissioners declared that the proposition submitted had been carried by a majority of 155 votes; that thereafter, on November 19, 1886, the board of county commissioners ordered the county clerk to make the subscription of $80,000 to the capital stock of the railroad company, and that in pursuance of that order the county clerk made the subscription; that thereafter the railroad company proceeded with the construction of its railroad, and that it intended at the July, 1887, meeting of the board, to tender to the treasurer of the county $80,000 certificates of stock, and to demand from the board of county commissioners $80,000 of the bonds of the county in payment therefor, and that the demand would be made upon the ground that the railroad had been completed and was in operation as required by the terms of the proposition, and that the railroad company had complied with all the conditions contained in that proposition. It was then alleged that the petition presented to the county commissioners, and upon which the election was called, did not contain

the names of and was not signed by two-fifths of the then resident tax-payers of that county; that there were two thousand resident tax-payers, and that the petition did not contain the names of more than five hundred resident tax-payers, and that the names to the extent of one hundred or more of those who signed the petition were not the signatures of the persons purporting to sign the same, and were not authorized by such persons, and that the petition was illegal and insufficient in law upon which to call or hold an election, and that the election and proceedings connected therewith, and the subscription of stock, were illegal and void. He asked that the issuance and delivery of the bonds be enjoined.

The board of county commissioners filed an answer in the cause, admitting the allegations contained in the petition. After the action was begun, the plaintiff amended his petition upon leave of the court, by adding to it the name of the railroad company as a defendant, and making the company a party defendant to the action. The railroad company was brought into court by a summons, and it filed an answer, admitting all the allegations in the petition, except as to the insufficiency of the petition upon which the election was called, but it denied any insufficiency or illegality of the petition, election, or in the subscription of stock, and denied any wrongdoing upon its part. The cause was tried by the court at the June, 1888, term, upon the issues so made. The railroad company objected to the introduction of any evidence under the petition, on the ground that it did not state facts sufficient to constitute a cause of action against the railroad company. When the plaintiff closed his case and rested, the railroad company demurred to the evidence introduced by him, and this demurrer was overruled.

The court made findings of fact and conclusions of law, and among other things found that the petition requesting the calling of an election contained the names of 827 persons, and that the board after an examination declared that it contained the signatures of 656 resident tax-payers, and that that number was more than two-fifths of the entire number of resident

tax-payers in the county at that time. It was further found that an election was held upon an order duly made, that the vote cast thereat was duly canvassed, and it was determined that the proposition was carried by a majority of 155; and that on November 19, 1886, the board directed the county clerk to subscribe to the capital stock of the company, and that in pursuance of the order the county clerk made a subscription to the capital stock of the railroad company for $80,000 on behalf of Chase county, under the seal of the county, which subscription was duly received and accepted by the railroad company.

"That thereupon, and after the 19th day of November, 1886, and prior to the 1st day of June, 1887, the Chicago, Kansas & Western Railroad Company complied with and fulfilled each, every, and all of the propositions and conditions which it was required to fulfill and comply with in order to carry out its part of said subscription, and it fully did and performed each, all, and every of the several things which it was to do and perform under and by the terms of the proposition submitted at said special election as shown by 'Exhibit A' to plaintiff's petition, within the time therein required, and it did and performed everything that it was required to do and perform by the terms of said subscription, within the time therein required.

"That the plaintiff knew of the circulation of the petition that was presented to the board of county commissioners on the 12th day of October, 1886, and knew of the order of the board calling said special election, and of the election being held, of the canvass of the vote and its result; and of the building of the railroad on the part of the railroad company in accordance with the conditions contained in the said proposition so voted upon, during the time the said railroad was being built; and that during said time the plaintiff lived within five miles of the court house at Cottonwood Falls, Kansas; that during all said time he never made any investigation of the questions involved in this action until after the 1st day of June, 1887, and that he then commenced this action at the instigation of parties who had right-of-way appeal cases against the defendant railroad company then pending in this court, and that this case was commenced by the plaintiff to compel the railroad company to compromise and settle such right-of-way

7 — 41 KAS.

appeal cases, and with the expectation and belief that this case would be compromised and settled by the railroad company and dismissed by the plaintiff upon said settlement of said right-of-way cases."

In respect to the petition upon which the election was called, the court found that on October 12, 1886, the entire number of resident tax-payers of Chase county, Kansas, was 1,425, and that the petition praying for an election, to which 827 names were attached, contained only 567 legal petitioners or resident tax-payers, which was just three less than the number necessary to have signed it in order to constitute two-fifths of the number of electors as found by the court. Motions were made by the railroad company for judgment on the findings and also for a new trial, both of which were overruled and excepted to. The railroad company brings the case here, and insists, among other things, that it was not properly brought into the case and made a party in the action, that no cause of action was set forth in the petition against the company, and hence that its objection to the introduction of any testimony and its demurrer to the evidence were erroneously overruled.

The question first presented and argued here is, whether in this special proceeding the plaintiff can bring in any defendants other than those named in the statute under which the action was brought, or have any question tried and determined except the contest of the election. The action brought by Evans can only be maintained under chapter 79 of the Laws of 1871. According to the allegations of his petition, he has no interest in the subject-matter of the action different from other citizens and electors of the county, and has no right to sue or appear in behalf of the public except as he is specially authorized by the statute mentioned. That statute provides a special method for contesting county-seat elections, and all elections other than those held for choosing public officers, and permits an elector to institute a contest, giving him a right which did not previously exist to interfere in public matters and in which he has no special interest. The act provides in

terms what elections may be contested at the instance of the elector, the style of the action, the parties thereto, and the procedure governing the same. In § 1 of the act it is provided that such an election may be contested by the elector "in the district court of the proper county, as hereinafter provided." The 5th section provides how such an election as the one we are considering may be contested. Omitting the portions not applicable to this action, it reads as follows:

"Whenever after any election . . . the board of can-vassers shall declare . . . any question or proposition voted upon at such election to have been adopted, any elector . . . aggrieved thereby may commence an action . . . to enjoin and restrain the proper officer or officers . . . from executing, issuing or delivering any bond or bonds . . . or from subscribing any stock for or from loaning the credit of such county, township, or municipal corporation," etc.

It is clear from the nature of the proceeding and the language employed by the statute, that the elector cannot contest any other question or proceed against any other persons than those named in the statute. The right of the elector to enter and carry on the contest is both created and limited by this statute, and by it he is limited to the mere question of contesting the election, and to accomplish this can only proceed against the officers of the county, township or municipal corporation upon whom the duty of executing and delivering the bonds voted at the election is devolved. It has always been held that when an elector invokes the remedy thus specially given, he must bring himself strictly within the provisions of the statute conferring the same, and must follow the procedure which the special statute prescribes. ( *The State, ex rel., v. Smith,* 31 Kas. 129; *Clark v. Comm'rs of Montgomery Co.,* 34 id. 632; *The State, ex rel., v. Comm'rs of Wabaunsee Co.,* 36 id. 180.) In the case last cited it is said that "under this act an injunction can be allowed only after the election, after the canvass, and only after the result has been declared; and in such elections as the one in this case, it can be allowed *only to restrain the officers*

<small>Contesting elector to conform to statute; parties.</small>

from subscribing for stock, or from executing, issuing or delivering bonds, or from loaning the credit of their county, township, or municipal corporation." The railroad company had no duty to perform in holding the election, and derived no authority from the result of the election. It was held for the purpose of empowering the county commissioners of the county to act for the people in the making of a contract of subscription between them and the railroad company. Even an affirmative vote creates no contractual right between the railroad company and the county. Such right arises only when the subscription is made by the proper officers in pursuance of a favorable vote. (*C. K. & W. Rld. Co. v. Comm'rs of Osage Co.*, 38 Kas. 597.) But as the statute gives the elector no authority to proceed against any person other than the officers of the municipality, there is little room to contend that the railroad company or any outside persons can be brought into court and made parties to the contest, and thus be required to litigate with this elector questions not contemplated by the statute. In this case the proposition was voted on, was declared to have been carried, the subscription of stock was ordered to be made, and was made, received and accepted. After a contract was thus entered into between the county and the railroad company, the company built the road in accordance with the contract, and complied with every condition of the proposition. After all this had been done, and with knowledge of every step, the elector Evans instituted this proceeding — which is designed alone to contest an election — for purposes other than to contest, and sought to bring in outside parties, and to inquire into and cancel a contract already made between the county and the railroad company. This cannot be done, at least not in this special proceeding. Deriving his rights solely under a statute, he is strictly confined within its limitations, and must leave all other matters to be inquired into at the instance of the proper public officer, who has full authority, and who may in a suitable action bring in the necessary parties and have such matters inquired into. There is no controversy here between the elector and the

county commissioners, nor was there an issue formed between them in the district court, as the commissioners answered, admitting the truth of the allegations contained in the plaintiff's petition; and this ended the contest between the parties who were properly before the court. As the railroad company was not a proper party and is alone in bringing the case to this court, we cannot in this proceeding inquire into the question of whether the elector was estopped from maintaining the action by reason of delay or bad faith in instituting the same, or because the rights of third parties were involved before the action was begun, nor any of the other questions so fully presented by the briefs of counsel.

The judgment of the district court against the Chicago, Kansas & Western Railroad Company will be reversed, and the cause remanded, with directions to dismiss it from the action and enter judgment in its favor for costs.

All the Justices concurring.