THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. THE BOARD OF COMMISSIONERS OF CHASE COUNTY *et al.*

1. CASE, *Followed.* The ruling in *H. & S. Rld. Co. v. Comm'rs of Kingman Co.,* 48 Kas. 70; same case, 28 Pac. Rep. 1078, followed, and the principle of estoppel as therein stated applied.

2. RAILROAD COMPANY, *Entitled to Bonds.* The testimony examined, and found to be sufficient to show that the plaintiff has complied with the conditions of the proposition and agreement made between it and the county of Chase, and that it is entitled to the execution of the bonds in accordance with the terms of such proposition and agreement.

3. MANDAMUS—*Demand Before Application.* In a proceeding of *mandamus,* to compel the performance of a public duty, no formal demand upon the defendants is necessary where their course and conduct manifest a settled purpose not to perform the duty, and where it clearly appears that a formal demand would be useless and unavailing.

*Original Proceeding in Mandamus.*

ALL the material facts of this case appear in the opinion herein, handed down July 8, 1892.

*Geo. R. Peck, A. A. Hurd, C. N. Sterry,* and *F. A. Brogan,* for plaintiff:

The admissions made by the pleadings and the evidence offered in behalf of plaintiff, make a *prima facie* case, entitling the plaintiff to a peremptory writ. In view of the recent decision of this court in *H. & S. Rld. Co. v. Comm'rs of Kingman*

Co. (48 Kas. 70), we deem it wholly unnecessary to discuss the almost innumerable questions that must arise upon the evidence concerning the sufficiency of the petition, for the reason that in this case it must be deemed and held that the defendants are estopped from raising that question. We take it for granted that the decision in the above case has finally established the law upon that question, and we need not devote any further time to its consideration.

The defendants have announced in court that they would urge that the doctrine of estoppel should not be applied in this case, for the reason, as they claim, that the plaintiff company was instrumental in procuring the petition to be circulated and signed, and that the plaintiff, in fact, caused the petition to be presented. This contention is unsound, both in fact and in law. It cannot be contended by the defendants, under this branch of the case, that the plaintiff or any of its officers or agents knew that the petition was insufficient; there is not a scintilla of evidence tending to show such a state of facts. Furthermore, the evidence does not even tend to show that the plaintiff caused the petition to be circulated and presented to the board. We may concede the fact to be that the new road to be built by the Chicago, Kansas & Western was intended to coöperate as a branch line with the Atchison, Topeka & Santa Fé, although this fact is only hinted at throughout the case, and is nowhere distinctly shown. But the fact that one railroad company coöperates with another does not make one the agent of the other, or responsible for its acts. See *A. T. & S. F. Rld. Co. v. Davis*, 34 Kas. 209.

The acceptance of the subscription is clearly shown by the fact that the agreement of subscription was delivered to the treasurer of the plaintiff company and retained by him, and produced in evidence by the plaintiff in this case, as the foundation for its cause of action. The acceptance of the contract is further shown by the fact that the railroad company immediately proceeded with the construction of the road upon the exact terms and conditions called for by the contract of subscription. It is not true that no demand was made for

the bonds. The evidence of D. W. Mulvane shows conclusively that after the completion of the road he went before the three county commissioners and the county clerk, who were all assembled in the county clerk's office, and there presented them with a draft of the bonds, and demanded their execution, which was refused. A formal demand would be wholly unnecessary to the plaintiff's right of action, in a case of this character, where the defendants, upon what are claimed to be substantial grounds, have denied the right of the plaintiff to the bonds. *The State v. Rahway*, 33 N. J. L. 111; *Hall v. Draper*, 20 Kas. 140; *Shoemaker v. Simpson*, 16 id. 43.

The requirement that the company "shall establish and maintain a division terminus" is not a condition precedent. The previous provision of the proposition requires that the road shall be built and completed and in operation on or before the 1st day of June, 1887, and there is no doubt that the building of the railroad within the time limited is a condition precedent, and that time is of the essence of the contract. But the provision in regard to the division terminus, while it constituted a binding agreement on the part of the railroad company, does not by its terms, nor by any fair construction of it, constitute a condition precedent. *Swartwout v. Railroad Co.*, 24 Mich. 389; *Chamberlain v. Railroad Co.*, 15 Ohio St. 225; *Miller v. Railroad Co.*, 40 Pa. St. 237; *Townsend v. Lamb*, 14 Neb. 324.

Not only has there been a substantial compliance with the terms of the subscription, but the conditions imposed upon the railroad company have been strictly and literally fulfilled. Even if only a substantial rather than a strict and exact performance of the conditions were shown, the plaintiff would still be entitled to the bonds. See *S. K. & P. Rld. Co. v. Towner*, 41 Kas. 72.

If the defendants had proven all they claim in regard to the completion of the road, it would still remain true that the company had in good faith substantially constructed the road as called for, and had it ready for the operation of trains on

26—49 KAS.

the 1st day of June, 1887, and has continued to operate trains regularly ever since, and did, moreover, follow up the first construction of the road by making such alterations and repairs as experience showed to be necessary to make a first-class road. Moreover, as further showing the good faith of the company, it did not stop building the road at the north line of Chase county, as it might have done, but proceeded to extend the road further in the state of Kansas, to the city of Abilene.

*W. S. Romigh,* county attorney, *Madden Bros., J. G. Waters,* and *D. C. Tillotson,* for defendants:

If a demand is yet necessary as a condition precedent to bringing an action in *mandamus,* this suit must fail. The testimony of four witnesses proves beyond all doubt that Mr. Mulvane was mistaken in testifying that he was before the board at its regular July meeting, 1887. The board of county commissioners was not in session the day that Mr. Mulvane was attempting to demand the execution of the bonds in controversy. The casual meeting of the persons composing the board of county commissioners does not constitute them a board; a demand upon such an assembly is not a demand upon the county. This is so, or the reasoning and law announced in *P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.,* 16 Kas. 302, are unsound. Another reason, and one that we regard as absolutely conclusive, is, that plaintiff has not complied with § 1292, General Statutes of Kansas, 1889. Plaintiff can have no right to the bonds in controversy, either in law or equity, without first complying with this statute. That plaintiff recognizes that fact is shown, in that the stock was once deposited in accordance therewith, but voluntarily withdrawn. Since that stock was withdrawn, there has never been a day that the board of county commissioners of Chase county had any right or duty to execute and deliver the bonds in controversy. Herein is an essential distinction between the case at bar and the case of *H. & S. Rld.*

*Co. v. Comm'rs of Kingman Co.* (48 Kas. 70), upon which plaintiff relies.

As the cases cited by plaintiff— *The State v. Rahway*, 33 N. J. L. 111; *Hall v. Draper*, 20 Kas. 140; *Shoemaker v. Simpson*, 16 id. 43—have no application to the matter at issue herein, we shall not devote any time to discussing them; but we will ask the court to examine the case of *Magie v. Township of Union*, 42 N. J. L. 531, and note that the members of the board in the case at bar proposed to dispose of the matter of issuing these bonds at the regular meeting in July.

By the evidence of Joab Mulvane and of D. W. Mulvane, the alleged contract of subscription originated with plaintiff company, and brings the construction of the proposition with which plaintiff claims to have complied within the rule laid down in *M. K. & C. Rly. Co. v. Thompson*, 24 Kas. 181, *et seq.*, that a proposition is to be construed most strongly against the one who proposes it.

Plaintiff concedes that the conditions that the road should be built and completed and in operation are conditions precedent, but claims they were complied with on or before the time required, the 1st day of June, 1887. We then claim that the plaintiff failed to complete its road in time, in this: There was no good and sufficient bridge across Fox creek; there was an absolutely unsafe bridge across the Cottonwood at Cottonwood Falls; the necessary side-tracks and connections with the Ellinor extension were not completed. Side-tracks are as much a part of the road as the main line. *A. C. & P. Rld. Co. v. Comm'rs of Phillips Co.*, 25 Kas. 274. Mr. Earl, witness for plaintiff, says the C. K. & W. track was very rough for a new track. There is no competent evidence, in fact none whatever, to prove that the plaintiff owned any right-of-way for its road in Chase county. Plaintiff does not prove, or attempt to prove, that its road was fenced; that crossings at public highways had been put in, and signs erected at the crossings of highways or public roads. It rests entirely upon the naked statement that it had down a track and commenced to operate a passenger train over it on the

last of May.   That the evidence before this court does not warrant a judgment that the plaintiff's road was complete on June 1, 1887, we refer to *Parsons v. Tilden,* 59 N. Y. 640, a decision approved by this court in *M. K. & C. Rly. Co. v. Thompson,* 24 Kas. 183.

Another condition in this proposition under consideration is, that plaintiff "shall establish and maintain a division terminus, with such division facilities as may be necessary for the operation of the C. K. & W. Rld. Co., at a point situated between the city of Strong City and the city of Cottonwood Falls, Chase county, Kansas." Plaintiff has not offered a syllable of evidence to prove that it has ever established a division terminus any place in Chase county.   It has attempted to prove the existence of certain division facilities.   But division facilities do not constitute a division terminus.   There is no reason why the improvements claimed by plaintiff could not be in the middle of a division.   A division is a thing required in the operation of a road; a division is that part of a road between which train crews run.   The division facilities may be anywhere along the line.   Plaintiff attempts to interpolate into this proposition, that these facilities were to be at a point on the line of road between the two places named. But such is not the wording of the proposition.   It is plain; there is no chance to misunderstand it; it needs no interpretation.   Both maps — the one offered by plaintiff and the one offered by defendants — show that plaintiff ran its line of road off east of both towns, and then turned back upon itself for the purpose of avoiding this part of the proposition; built several hundred feet of extra track in order to reach a point not between the two towns named.   As to the location of these facilities, see *V. & T. Rld. Co. v. Comm'rs of Lyon Co.,* 6 Nev. 68, *et seq.,* approved by this court in *M. K. & C. Rly. Co. v. Thompson,* 24 Kas. 183.

Plaintiff attempts to get out of its dilemma by claiming that this is a condition subsequent, and amounts to nothing, any way.   But this division terminus and facilities, and their location, are a part of the consideration involved.

Plaintiff insists that the Kingman county case effectually disposes of this case. It appears to assume that "ask, and ye shall receive," was written wholly for the benefit of railroad companies. If this court should hold that the decision in that case must stand as good law, there is the further question: Does the doctrine therein announced apply to the case at bar? That the estoppel does not apply if plaintiff has not complied with the contract of subscription, will not be denied; and does not apply if plaintiff had notice of the alleged defects in the petition presented to the board of county commissioners of Chase county, Kansas, on October 12, 1886, or an equal opportunity of knowing the facts. *Hendricks v. Kelly,* 64 Ala. 388; *Marco v. Fond du Lac Co.,* 63 Wis. 212; *Steel v. Smelting Co.,* 106 U. S. 455, 456; *Dorlarque v. Cress,* 71 Ill. 382; *Bales v. Perry,* 51 Mo. 453; *Hill v. Epley,* 31 Pa. St. 333, 334; *Buck v. Milford,* 90 Ind. 293.

If the conduct supposed to have created the estoppel was brought about or directly encouraged by the party claiming the estoppel, then no estoppel is created. *Gallagher v. The People,* 91 Ill. 582, *et seq.* It will be conceded that the party claiming the estoppel must, relying upon the representations of the party complained of, have done something by which he would be prejudiced were the estoppel not allowed. Bigelow, Estop. (5th ed.), 628, 629, n. 1. That plaintiff cannot claim an estoppel at all, defendants maintain, because the plaintiff has never complied with the alleged contract of subscription, as shown by analysis of evidence showing want of compliance therewith; and that the estoppel is not at issue herein, and all evidence relating thereto is incompetent and not within the issues. Conduct, to work an estoppel, must have been made with the intention, actual or virtual, that the other party should act upon it. Bigelow, Estop., p. 570.

The plaintiff has parted with nothing. It has its road, if it ever had one; it has its stock. It voluntarily withdrew its stock from the custody of the county treasurer. It certainly has its division terminus. It does not claim that we ever got that; and its own evidence shows that it still has its division

facilities. The plaintiff has lost nothing. *M. K. & C. Rly. Co. v. Thompson*, 24 Kas. 183. Therein this case differs materially from the Kingman county case. In that case the railroad company had done all the contract called for, and had delivered its stock to the township, which stock was retained by the township. Nothing of that kind exists in this case.

*Geo. R. Peck, A. A. Hurd, C. N. Sterry*, and *F. A. Brogan*, for plaintiff in reply:

The defendants cite the case of *M. K. & C. Rly. Co. v. Thompson*, 24 Kas. 181, in support of the proposition that a conditional subscription for stock by a municipal corporation is to be strictly construed against the railroad company. That case is not in point. The distinction drawn between that case and a case like the one at bar by this court, in the case of *S. K. & P. Rld. Co. v. Towner*, 41 Kas. 72, and *C. K. & W. Rld. Co. v. Makepeace*, 44 id. 680, renders the case in 24 Kas. totally inapplicable. In that case the railroad company had already entered into a contract with other parties for the construction of a certain road according to certain plans and specifications, which provided exactly and minutely how the road should be built, and just what would be deemed a completion of it; the contract for subscriptions provided that, if the road were built according to those plans and specifications by a certain date, the company should be entitled to the bonds; otherwise not. The court merely held, in that case, that the road must be completed in accordance with such plans and specifications in order to earn the bonds. Now, the contract for subscription in the case at bar is almost identical with the proposition in 41 Kas. and 44 id., the roads in both cases being constructed as extensions of the Santa Fé system, and the propositions having been drawn in a very similar manner. Now, we submit that even if all that the defendants contend for in regard to the completion of the road were fully established, nevertheless the road in this case was on the date in question in a far more finished condition than either of the roads considered in the cases in 41 Kas. and 44 id.

It seems perfectly absurd to say that there has not been a refusal to issue the bonds, when the defendants have in fact refrained from issuing them for a period of nearly five years after they were demanded; and yet that is precisely the contention of the defendants' counsel upon this point.  It is true that, before *mandamus* proceedings can be instituted, a proper demand should be made upon the public officers, and either a refusal should be shown, or such circumstances as would lead to the inference that there was no intention to perform the duty required.  But if it appears, either from circumstances occurring before the issuing of the writ, or from the return to the writ itself, that there was no intention to perform, then a demand need not be made.  *The State v. Board of Finance,* 38 N. J. L. 259; *Palmer v. Stacy,* 44 Iowa, 340; Dill. Mun. Corp., § 696.  In general, neither the tender of the performance by one party, nor demand for performance to be made upon the other, will be required when it would be useless and foolish.  *Chinn v. Bretches,* 42 Kas. 316; *Thompson v. Warner,* 31 id. 533; *Raper v. Harrison,* 37 id. 243; *Tracy v. Irwin,* 18 Wall. 549.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding brought by the Chicago, Kansas & Western Railroad Company to compel the defendants to issue and deliver to plaintiff the bonds of Chase county in accordance with the vote of the people and the contract of the parties.  Several phases of the controversy have already received the consideration of the court, and some preliminary questions have been determined. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 42 Kas. 223; same case, 43 id. 760.  See, also, *C. K. & W. Rld. Co. v. Evans,* 41 Kas. 94.)  It has been finally submitted upon the merits, and the large volume of testimony which has been taken relates mostly to the sufficiency of the petition upon which the election was ordered.  The alternative writ alleges in substance that a legal petition was presented to the board of county commissioners of Chase county on October 12, 1886, asking that an

election be called to submit to the voters of the county a proposition to subscribe for $80,000 of the capital stock of the railroad company; that the petition was signed by 828 resident tax-payers of the county; that the board duly considered the petition, and found and determined that it contained the signatures of more than two-fifths of the resident tax-payers of the county, and thereupon ordered an election to be held on November 16, 1886, to determine whether the subscription should be made upon the terms and conditions contained in the order for the election; that an election was duly held, and the returns canvassed, and the result found and declared to be in favor of the subscription, and that the county clerk upon the order of the board thereupon subscribe for $80,000 of the capital stock of the company; and that the company thereupon constructed and completed its road in accordance with the terms of the subscription made by the county; and it is finally alleged, that the defendants refuse to issue and deliver its bonds or to carry out the terms of the subscription.

Three principal objections are urged by the defendants against the allowance of the writ: First, the insufficiency of the petition presented to the board of county commissioners on October 12, 1886, for the calling of an election; second, non-compliance with the conditions of the contract of subscription made between the county and the company; and, third, the insufficiency of the demand made by the company for the issuance of the bonds.

The leading consideration in the case, and the one upon which the most effort has been expended by the parties, is the sufficiency of the petition which was the basis of the call for an election. It was regular in form and appeared to contain a sufficient number of signatures, and it recited that the signers were residents and legal voters of the county. Upon a canvass of the petition, the board of county commissioners found and determined that it contained more than two-fifths of the resident tax-payers of the county, and thereupon ordered an election in accordance with the prayer of the petition. The

sufficiency of the petition was not challenged by any one until after the election was held, the bonds voted, the subscription made by the county, and the railroad built, nor until after steps had been taken by the plaintiff to obtain the execution and delivery of the bonds. Notwithstanding the finding and declaration of the board of county commissioners that the petition was legal and sufficient, the defendants have endeavored to show that all who signed it were not legal petitioners, and that it did not contain the requisite number of legal signers.

The plaintiff insists that it has shown the petition to have been sufficient in every respect, but it contends that this inquiry is no longer open, and that the defendants by their acts and acquiescence are estopped from asserting that the petition was not signed by two-fifths of the resident tax-payers, if it really had been defective in that respect. The last contention has already received the attention of the court, and the doctrine of estoppel in a case substantially like this one has been applied and sustained. (*H. & S. Rld. Co. v. Comm'rs of Kingman Co.*, 48 Kas. 70; same case, 28 Pac. Rep. 1078.) As has been stated, the election was called upon what appeared to be a valid petition, and which was found and determined by the county board to be formal and legal. A large majority of the legal electors of the county voted in favor of the proposition, and the county board canvassed the result, and declared that the bonds had been voted in accordance with the vote of the people, and, upon the order of the county board, a legal subscription was made to the capital stock of the company, upon the faith of which the company proceeded to construct the railroad in accordance with the terms of the proposition, and it is claimed that the railroad company has substantially complied with all the conditions of the proposition. If there has been such compliance, the case falls fairly within the ruling in the Kingman county case, and entitles the plaintiff to the allowance of the writ. The two cases were pending at the same time, and the counsel in the present case appeared in the Kingman county case, and

1. Case, followed.

were heard at length in argument upon the question of estoppel.

We see no cause to disturb the ruling nor to enlarge upon the reasoning of the decision made in that case; neither do we find any room for a distinction in the facts of the two cases; nor any reason why the ruling in the Kingman county case is inapplicable here. The defendants attempt to distinguish the cases, for the reason that some persons connected with the railroad company assisted in securing the petition and the calling of the election. The obtaining of signatures and the presentation of the petition appear to have been in the hands of a committee of the citizens of Chase county, and this committee was assisted to some extent in its work by persons who were officers or agents of the company. It does not appear, however, that the company or any of its officers or agents had any knowledge of the defects in the petition, if any existed; nor is it shown that any insufficiency in the petition was called to the attention of the company until after the road was completed and the conditions of the contract upon its part carried out. No knowledge of defects, no bad faith, nor attempt to mislead on the part of the company is shown, and no reason is seen why the plaintiff cannot avail itself of the principle of estoppel. The fact that the capital stock was received and retained by the township in the Kingman county case, and not in this case, will not prevent the application of the rule here. The exchange of stock for bonds is subsequent in point of time to the expenditure of money on the faith of the contract and the completion of the road by the company; and hence, the tender or receipt of the stock does not affect the question of estoppel.

It is insisted now, however, that the company did not substantially comply with the conditions of the contract between it and the county. The contract required that the company should build, complete and put in operation, by lease or otherwise, on or before the 1st day of June, 1887, a railroad, from a connection with the Ellinor extension, at some favor-

able point in the valley of the South Fork, on the Cottonwood river, in the county of Chase, to the north line of the county; and one of the conditions was, that the company should "establish and maintain a division terminus, with such division facilities as may be necessary in the operation of the Chicago, Kansas & Western railroad, at a point situated between the cities of Strong City and Cottonwood Falls, Chase county." The proof shows the establishment of a division terminus with such division facilities at a point on the line of road between Cottonwood Falls and Strong City. It appears, however, that it is a little east of a direct line between the points named; and it is contended that for this reason there is a non-compliance with the conditions of the contract. There is nothing substantial in this objection. It was the contract and purpose of the parties that the division facilities should be located on the line of the road, and nothing in the proposition indicates that the company was required to build a straight line of road between the points named. It was doubtless the intention of both parties that diversions from a direct line should be made wherever it was necessary in order to obtain a good road-bed. The division facilities in this case are only a few rods east of a direct line between the towns, and no reasonable interpretation of the contract would hold that there was a non-compliance with respect to the location.

It is said that the contract was not complied with in respect to the building of bridges across the Cottonwood river at Cottonwood Falls, and over Fox creek a short distance west of Strong City. Bridges were built at both points, and the road was in operation, from its initial point on the Ellinor extension to the north line of the county, on the 31st day of May, 1887. They were what is known as pile bridges, and such as are in common use on western railroads, and the same as were built over such streams by the Chicago, Kansas & Western and the Atchison, Topeka & Santa Fé railroads. A short time after the opening and operation of this road, there was substituted for the bridge at Cottonwood Falls what is known as a Howe truss bridge; and over Fox

creek, where the road was built parallel with that of the Atchison, Topeka & Santa Fé railroad, the plaintiff joined with the Atchison company in the construction of an iron bridge. The fact that other bridges were substituted for these later in the year, and the fact that when these first bridges were built the company had in contemplation the putting in of a better class of bridges, does not prove that these first built were insufficient to meet the requirements of the contract between the county and the company. It appears, too, that one end of the Cottonwood bridge was dislodged by a freshet shortly after it was constructed; but the testimony clearly shows that both bridges were up to the standard of railroad bridges in this state, over such streams, both as to expense and durability.

It is also said that the plaintiff had no track over Fox creek for a time. The testimony satisfactorily shows, however, that on the 1st day of June, 1887, the plaintiff had a track of its own from the initial point on the Ellinor extension to the north line of the county. Some of the testimony tends to show that the track at Fox creek was subsequently taken up and another track used for a time; but if this was done it was during the substitution of the iron for the wooden bridge at that point, and the mere temporary use of another track under the circumstances, and for a short time, could not be regarded as a breach of the contract. At Strong City, and for a short distance west of that point, the plaintiff's line of road runs parallel with that of the Atchison Topeka & Santa Fé Railroad Company, and by an agreement with the latter company, the plaintiff obtained the right to occupy a portion of the right-of-way of the Atchison roal. In accordance with that agreement and license the road was built, but no deed or conveyance of the easement was ever made to the plaintiff. The Atchison company agreed to deed the right-of-way, but for some reason the execution of the conveyance was overlooked. The failure to execute a formil conveyance, however, is no defense in the present case. The plaintiff has entered upon the possession of the right-of-way

under the agreement, has constructed its road relying upon the agreement, and has expended money upon the faith of it, and therefore the plaintiff cannot be disturbed in its possession. It does not appear, however, that the plaintiff's right of possession has ever been questioned by the Atchison company, or by any one else. A reading of the testimony very clearly shows a substantial compliance with the conditions of the subscription. (*S. K. & P. Rld. Co. v. Towner,* 41 Kas. 72 ; *C. K. & W. Rld. Co. v. Makepeace,* 44 id. 676.)

The finding of the district court in the case of *C. K. & W. Rld. Co. v. Evans,* 41 Kas. 94, was to the same effect. Although the decision in that case has no binding force in this, it discloses that at a trial in the immediate locality, and with the witnesses personally present in the court, it was found that the "railroad company complied with and fulfilled each, every and all of the propositions and conditions which it was required to fulfill and comply with in order to carry out its part of said subscription, and it fully did and performed each, all and every of the several things which it was to do and perform under and by the terms of the proposition, . . . and within the time therein required." It appears, therefore, that the plaintiff has earned the bonds of the county, and was entitled to the delivery of the same after June 1, 1887, upon demand.

2. Railroad company, entitled to bonds.

It is claimed as a defense, however, that no legal demand was ever made upon the board of county commissioners for the issuance and delivery of the bonds. It appears that, after the completion of the road, and about the middle of June, 1887, the members of the board were notified that their presence was required at the county seat to take action with reference to the bonds, and that they responded to this call, when an agent of the plaintiff visited Cottonwood Falls and deposited $80,000 of the capital stock of the plaintiff with the county treasurer, and then delivered bonds prepared for signing in the county clerk's office, where members of the board were, and requested the execution of the same. The county commissioners, however, were not in session as a board ; and,

while it was evident that the individual members of the board were unwilling to execute and deliver the bonds, no action was taken by them in an organized capacity. Neither was any formal demand made when they were sitting as a board, and a demand upon the individual members is not sufficient in a case where a demand is required. It would seem, therefore, that no formal demand was made prior to the commencement of this proceeding. But such a demand is not always necessary in order to maintain *mandamus*. If, when this action was begun, the board had shown a willingness to perform its duty, but had also set forth that no demand had been made upon it, the board certainly would have been entitled to a judgment for costs. But where the course and

3. Mandamus— demand before application. conduct of the officers are such as to show a settled purpose not to perform the imposed duty, the writ may be awarded without any formal demand. The action of the officers before and since the commencement of this action clearly shows that a formal demand would have been unavailing. The commencement of this proceeding was at least a sufficient demand, and the defendants, instead of indicating a willingness to execute the bonds, expressly denied the right of the plaintiff to the bonds, and denied the existence of any obligation or duty to issue and deliver them. Having distinctly manifested their purpose not to perform this duty, the question of a formal demand is no longer important. It appears that it would have been useless and foolish, and the law rarely requires the doing of a useless act. (*Shoemaker v. Simpson*, 16 Kas. 43; *Hall v. Draper*, 20 id. 137; *Raper v. Harrison*, 37 id. 243; *Chinn v. Bretches*, 42 id. 316; *The State v. Common Council of Rahway*, 33 N. J. L. 110; *Cleveland v. Board of Finance*, 38 id. 259; *Tracy v. Irwin*, 85 U. S. 549; Dill. Mun. Corp. [4th ed.], § 867, and cases cited.)

We think the judgment should be for the plaintiff, and, therefore, the peremptory writ of *mandamus* will be allowed.

All the Justices concurring.