[No. 5203.]
[No. 2814 C. A.]

The Board of County Commissioners of Montezuma County v. The Montezuma Water and Land Company.

1. **County Commissioners—Water Rights — Fixing Rates — Injunctions.**

Mills' Ann. Stats., § 2298, provides that county commissioners shall, upon the application of either the water consumers of any ditch or of the parties owning such ditch, fix a reasonable maximum rate of compensation therefor; and § 2301 provides

that such rates shall not be changed within two years from the time when they shall be so fixed, unless upon good cause shown. Held, that where the county commissioners fixed a rate, and on the application of a water company refused to change the same, and, while in session, each member of the board stated that he would not consider another petition for a modification thereof, the water company is not precluded from bringing an action to restrain the enforcement of the rate fixed and to obtain the fixing of a different rate, on the ground that it had not, previous to bringing the action and after the expiration of two years from the date of fixing the rate, petitioned the board for a new rate.—P. 170.

2. Mandamus—Authorizing the Issuance of Writ—Refusal to Perform Duty.

To authorize the issuing of the writ of mandamus, there need not be a positive refusal to perform the duty. It is sufficient to show a manifest intention not to perform it. There may be such an unequivocal manifestation of a settled purpose and determination not to perform a public duty as not only to dispense with a formal demand but to justify the court in issuing the writ.—P. 172.

3. County Commissioners—Water Rights—Fixing Rates—Unjust Rates—Injunction Proper.

Where the rate fixed by the board of county commissioners for the use of water is such that the owner of the ditch can make no profit therefrom, its enforcement may properly be enjoined, since the term "reasonable compensation," as used in the statute (Mills' Ann. Stats., § 2298), implies that something must be given for the service.—P. 172.

4. Practice in Civil Actions—Pleading—Material Matters Well Pleaded—Admissions by Demurrer.

Where the complaint, in an action by a water company to restrain the enforcement of a rate fixed by the county commissioners, was verified and set out the order in hæc verba, and a demurrer was filed thereto and overruled, the defendant cannot complain on appeal that the order was not proven, since its demurrer admitted the truth of the allegation concerning such order.—P. 176.

*Appeal from the District Court of Montezuma County.*

*Hon. Jas. L. Russell, Judge.*

Action by The Montezuma Water and Land Company against the board of county commissioners of

Montezuma county to restrain the enforcement of a rate for the use of water. From a judgment for plaintiff, defendant appeals.

Decision *en banc*. *Affirmed.*

Mr. S. W. Carpenter and Mr. Chas. A. Johnson, for appellant.

Mr. John F. Spickard, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

The appellee filed its verified complaint in the district court of Montezuma county, wherein it alleged, with sufficient certainty, that it was a corporation and was the owner of a system of canals and waterworks used for the purpose of furnishing water to the inhabitants of Montezuma Valley in Montezuma county, that this system of canals and waterworks was of the value of $250,000.00; that on the third of April, 1895, the defendant board of commissioners of Montezuma county, upon the petition of F. W. Kroeger and others to fix a reasonable maximum rate for water to be delivered for irrigation and domestic purposes by plaintiff, found that a rate on the basis of ninety dollars per cubic foot per second of time for the season of each year during which water is required to be run by the laws of Colorado, was a reasonable maximum rate of compensation for water thereafter to be delivered from the ditches of plaintiff; that thereafter it was determined by plaintiff that the amount fixed by the board of county commissioners as the maximum rate for the carriage of water would not pay the taxes and expenses of operating and maintaining the canal system; that on the 26th of April, 1898, upon the petition of plaintiff, the county commissioners refused to change the rate established on the third of April,

1895. The order of 1895 establishing the rate and the order of 1898 refusing to change it are set out in the complaint *in haec verba*. The complaint then proceeds to allege that the rate was not a fair or reasonable compensation for the water to be supplied during each year, and that the amount delivered therefrom would be wholly insufficient to pay the operating expenses and taxes; that the entire amount received by plaintiff from all sources for the year 1898 was $5,476.23, and that the operating expenses and taxes for that year were $9,883.99; that for the year 1899 the entire revenue received was $6,210.55, and the operating expenses for that year were $7,310.19. The receipts and expenses for each year thereafter, up to and including the year 1901, are then set forth, showing that the taxes and operating expenses for the years 1898 to 1901, inclusive, exceeded the revenue for said years in the sum of $10,660.15; that at different times, in conversations with different members of the board of county commissioners, the members said that they were aware that the plaintiff was compelled to operate the canal system at a loss, but that they were powerless to aid plaintiff on account of the strong prejudice among the inhabitants of the county against plaintiff; that plaintiff talked with each member of the board as to again petitioning the board to fix a fair and legal maximum rate, and was informed that the board would make no change; that it knew the plaintiff was not making expenses, but that it could give no aid in the matter.

Plaintiff prayed judgment to enjoin the defendant from attempting to enforce or cause to be enforced its pretended order, and asked that defendant be ordered to fix a different rate.

To this complaint defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer

was overruled and defendant elected to stand by its demurrer. Plaintiff then introduced testimony showing, as alleged in the complaint, that it had suffered a loss for the years 1898 to 1901, inclusive, while operating under the order of the board of county commissioners, in the sum of $10,660.15; and that the attorney of plaintiff company had appeared before the board of county commissioners and asked whether or not it would consider the proposition of making a different rate, and, while in session, each member of the board stated that he would not consider it.

Judgment was rendered by the court in favor of plaintiff, enjoining the defendant from in any manner enforcing or attempting to enforce the maximum rate so fixed by it. Defendant appeals.

The first contention made by defendant is that the complaint is insufficient, for the reason that it appears that more than two years had elapsed from the time of making the order of 1898 and the commencement of the action, and that the complaint fails to show that the plaintiff petitioned the board to provide a different rate after the expiration of such two years and before the commencement of the suit.

Section 2298, Mills' Ann. Stats., provides:

"County commissioners shall, upon the application of either the water consumers of any ditch or of the parties owning such ditch, fix a reasonable maximum rate of compensation for water to be thereafter delivered from such ditch."

Section 2301, Mills' Ann. Stats., provides:

"Such rates shall not be changed within two years from the time when they shall be so fixed, unless upon good cause shown."

The case of *Wheeler v. Northern Colo. Irr. Co.,* 10 Colo. 582, is relied upon as an authority for the

proposition that a court cannot grant relief until the commissioners have first been applied to.

In that case the court said:

"It would have been obligatory upon him (the water consumer), before applying to the district court for relief against the unjust charges and terms imposed by the ditch company, to have made application to the county commissioners    *    *    *    to establish the maximum rate."

In that case no maximum rate had been established. In this case the rate had been established by the board, and appellant contended that before the action was instituted application must be made to the board to modify its ruling. With this in mind, it does not appear that the statement contained in the *Wheeler case* is pertinent. There is no provision in the statute requiring either party to apply to the board of commissioners for a modification of an order fixing rates, but in this particular case it appears that in 1898 the matter was presented to the board with a request to modify its former ruling. This request was denied.

It is reasoned by appellant that this proceeding is somewhat similar to an application for mandamus, and that the allegation of the complaint to the effect that the members of the board had refused to reconsider its order was not a sufficient allegation of refusal by the board itself.

*People ex rel. v. County Commissioners,* 8 Colo. App. 43, is cited to show that in mandamus cases a demand and refusal is necessary. In that case, however, the demand, if any was made, was made upon the chairman of the board of county commissioners, and the chairman refused to comply with the demand. There was no evidence or allegation that the board of commissioners, or either of the members thereof, had any notice of the making of such applica-

tion and of the refusal by the chairman. In this case, the allegation is that each member of the board had stated that the board would take no further action in the matter.

To authorize the issuing of the writ of mandamus, there need not be a positive refusal to perform the duty. It is sufficient to show a manifest intention not to perform it. There may be such an unequivocal manifestation of a settled purpose and determination not to perform a public duty as not only to dispense with a formal demand but to justify the court in issuing the writ.—2 Dillon on Munc. Corp. (4th ed.), § 867; see, also, *Cleveland v. Board of Finance,* 38 N. J. L. 262; *Palmer v. Stacy,* 44 Iowa 342; *Chicago, K. & W. R. R. Co. v. Board of Comrs.,* 49 Kan. 399.

Where the board of commissioners had in 1898 refused to modify the order made in 1895, and where, just previous to the commencement of the action, each member of the board had stated to the plaintiff that the board would not consider another petition for a modification, it would have been idle and foolish for the plaintiff to have made such a request.

The law does not require plaintiffs to perform fruitless and foolish acts previous to the institution of a suit to enforce their rights.—*Raper v. Harrison,* 37 Kan. 243; *Chinn v. Bretches,* 42 Kan. 316.

The next contention of appellant is that the complaint fails to show that the maximum rate fixed by the board of commissioners would not afford plaintiff a reasonable compensation; that in considering what is a reasonable compensation the rights of the water consumers are to be considered as well as the rights of the ditch owner. This may well be true, but if there is no compensation to the ditch owner at all, there can scarcely be said to be a reasonable compensation. The very term "reasonable compensa-

tion'' implies that something must be given for the service.

It was said in the case of *Leadville Water Co. v. Leadville,* 22 Colo. 297:

''Corporations or individuals exercising public franchises or performing public services, unless there is a contract otherwise providing and which exempts them from the operation of the general rule, are subject to the power of the legislative department of the government to regulate their compensation for such services.

''There is, however, a limitation to this general doctrine, necessarily implied, which is that such compensation must be reasonable; and it is a proper subject of judicial inquiry and determination, and under the guise of regulation must not be so inadequate as practically to result in confiscation of property, or to take property without due process of law.''

Each case must depend upon its special facts, and, when a tribunal is vested with the power to fix the rates for a corporation controlling a public highway, it must be determined whether such rates as an entirety are so unjust as to destroy the value of the property for all purposes for which it was acquired. It is its duty to take into consideration the interests of both the public and the owner of the property, together with all other circumstances fairly to be considered in determining whether the tribunal has, under the guise of regulating the rates, exceeded its constitutional authority and practically deprived the owner of the property without due process of law.— *Covington, etc., Co. v. Sandford,* 164 U. S. 578.

The company is entitled to a fair return upon the value of that which it employs for public convenience. The public is entitled that no more be exacted from it for the use of a public highway than the services

are reasonably worth.—*Smyth v. Ames,* 169 U. S. 466.

Appellant cites the case of *Redlands, etc., Co. v. Redlands,* 121 Cal. 365, as an authority sustaining its position. In that case it was said:

"The court finds that the operating expenses, taxes, and cost of maintenance and repairs to be incurred by the plaintiff during the year amount to $8,062.06. Deducting this sum from the minimum amount of revenue which the rates will yield, the plaintiff will receive a net income of $6,462.34, while the maximum amount of this revenue would yield a net income of $10,096.45. As the value of the plant is an essential element in determining whether either of these amounts will be a reasonable compensation to the plaintiff for its services, and as there was no averment or showing upon this point before the superior court, we cannot say that it appears from the record that the rates fixed by the ordinance will not yield a fair compensation."

This statement shows that the *Redlands case* as an authority is more for the appellee than for the appellant, for the reason that in that case, under the minimum rate fixed by the council, there would still be a net profit of more than $6,000.00 to the water company, while in the case at bar, the revenue derived under the rates as fixed by the commissioners is insufficient to pay the operating expenses, taxes and cost of maintenance and repairs; so that, in this case it is not a question as to whether or not the rates would yield a reasonable compensation, but the rates will not yield any compensation whatsoever. Under the rates fixed by the commissioners, the appellee is not only deprived of its property, but it must necessarily pay for the privilege of carrying water to its consumers.

The case of *Covington, etc., Co. v. Sandford,*

*supra,* is another one cited and relied upon by appellant. In that case it appears that the rate of tolls prescribed averaged about sixteen thousand dollars per annum, the expense of maintaining and operating the road averaged about eight thousand dollars per annum, leaving a net profit to the company of eight thousand per year.

In the *Railroad Commission cases,* 116 U. S. 331, Chief Justice Waite, speaking for the court, said:

"A state has power to limit the amount of charges by railroad companies for the transportation of persons and property within its own jurisdiction, unless restrained by some contract in the charter, or unless what is done amounts to a regulation of foreign or interstate commerce."

But he took care also to announce:

"It is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy; and limitation is not the equivalent of confiscation. Under the pretense of regulating fares and freights, the state cannot require a railroad to carry persons and property without reward; neither can it do that which in law amounts to a taking of private property for public use without just compensation, or without due process of law."

And so we say in this case that, while the legislature attempted to confer upon the county commissioners the power to fix a reasonable maximum rate of compensation for water to be delivered from irrigating ditches, this does not give to them the authority to confiscate the property of the ditch owner; neither does it give them the authority to compel the ditch owner to carry the water without compensation, and, inasmuch as it clearly appears from the allegations of this complaint that the revenue to be derived by the plaintiff under the maximum rate as

fixed by the commissioners is insufficient to pay the expense of the maintenance and operation of the system of canals and pay the taxes thereon so that the water cannot be delivered without a loss, the result is not only that the property of the plaintiff company is taken without compensation, but plaintiff is compelled to pay for the privilege of rendering the service of its waterworks, which is contrary to the letter and the spirit of the law.

After the overruling of the defendant's demurrer and its election to stand by its demurrer, plaintiff introduced some testimony, as hereinbefore stated, but did not, however, prove the making of the order fixing the maximum rate or the order refusing to modify the same, except as the testimony of the attorney, who stated that he had appeared before the board and inquired as to whether or not it would consider an application to modify that order, would amount to such proof. It is contended that because the orders themselves were not introduced in evidence, the court was not justified in finding that they were unreasonable. As hereinbefore stated, these orders are set out in the complaint *in haec verba;* the complaint is verified; the demurrer admits the material matters in the complaint which are well pleaded; and, having by its demurrer admitted the truth of the allegations concerning said orders, defendant is not now in a position to complain that they were not proven.

For the reasons hereinbefore set forth, the judgment of the district court will be affirmed.

Decision *en banc.*                    *Affirmed.*