THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general, Plaintiff*, v. J. N. DOLLEY, *as Bank Commissioner, etc., et al., Defendants.*

No. 16,626.

SYLLABUS BY THE COURT.

1. MANDAMUS—*Prerequisite to Action—Bank Guaranty Act—Admission of National Banks.* An action of mandamus to compel the bank commissioner to admit the national banks of the state to the benefits of the bank guaranty act can not be maintained until some national bank desires and unavailingly asks for admission.

2. ——— *Statutory Construction.* The court can not undertake to interpret a statute merely because there is a difference of opinion as to its meaning, and can only require a bank commissioner to perform some specific act or duty; and until a national bank invokes the benefit of the guaranty law there is no duty for him to perform in that connection, nor any basis for the issuance of the compelling writ of mandamus until such application has been refused.

Original proceeding in mandamus. Opinion filed July 9, 1910. Writ denied.

*Fred S. Jackson*, attorney-general, for the plaintiff.

*G. H. Buckman*, and *A. C. Mitchell*, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding in mandamus, brought by the state to compel the bank commissioner and the state treasurer to admit the national banks of Kansas to the privileges and benefits of the law providing for the guaranty of deposits in banks. (Laws 1909, ch. 61, Gen. Stat. 1909, ch. 10, art. 2.) In the alternative writ it was recited that the state officers were disregarding the provisions of section 13 of that act, which authorizes national banks to avail themselves of the benefits of the law, and that they had

refused to allow them to participate in the benefits of the guaranty fund created under the law.   Many national banks and a number of state banks were named as defendants, and some of these contested the good faith of the proceeding, but most if not all of the contesting banks have been dismissed from the action; and on the answer of the state treasurer that he had not and did not intend to refuse performance of any duty imposed on him under the bank guaranty statute the action was dismissed as to him.   The bank commissioner in his answer stated that he had received numerous inquiries from the officers of national banks as to whether they would be allowed to participate in the fund, and had informed them that his action would be based on the decision of the comptroller of the currency, and that when that officer decided that national banks could not participate in the fund he had declined to admit them to the benefits of the act.   He also alleged that the provisions of section 13 of the act relative to national banks conflicts with the rules and regulations prescribed by congress, and would therefore be beyond the power of the legislature and invalid.

In a deposition taken at the instance of some of the contesting defendants before they were dismissed from the proceeding, defendant Dolley testified that no direct application had been made by any national bank to be admitted to the benefits of the guaranty fund, and that he knew of no national bank which had passed a resolution in accordance with the provisions of the act and applied for admission.   He further testified that he had had numerous communications from national banks and many consultations with their managing officers in regard to whether they would be permitted to participate in the guaranty fund, in which he had informed them that he would be governed by the decisions of the federal authorities, and that he had had communications and conversations with fifty or sixty of them to

6—83 KAN.

the effect that his decision would depend upon the decision of the comptroller of the currency and other federal authorities. He stated that he went to Washington to consult the federal officers on the subject, and before doing so wrote to all the national banks of his purpose to do so, and when the adverse decision of the federal officers was announced he decided and stated that no national banks would be admitted. In his testimony he also stated that the directors and stockholders of the Commercial National Bank of Alma, of which he was a stockholder, met with him and discussed the making of an application for admission, and that those present were unanimously in favor of coming in under the guaranty act, but that he rejected the proposition. No formal application, however, was made, and no official record was kept of the action of the meeting.

The question now submitted is whether under the pleadings and evidence the court is warranted in determining the meaning and validity of the bank guaranty act. In a decision disposing of some preliminary questions in this proceeding it was held that "a court will undertake to pass upon the validity and effect of a statute only when necessary to the determination of an actual and concrete controversy." (*The State v. Dolley*, 82 Kan. 533, syllabus.) In the course of the opinion it was said:

"Of course, the court can not undertake to interpret a statute because doubts exist as to its meaning, in advance of a situation having arisen requiring action thereunder. In order for judicial power to be exercised with regard to the statute there must be an actual and concrete controversy regarding it—a definite act demanded under it on the one hand and refused on the other. But if these conditions exist the fact that the demand or the refusal, or both, may have been prompted by a purpose to make what is called a 'test case' does not defeat jurisdiction. It is not uncommon or objectionable for an officer to refuse to act upon a doubtful construction of a statute, irrespective of his

own judgment as to its true meaning, in order that the question may be speedily and finally settled in the courts.  An action brought for that purpose under such circumstances is not fictitious, though it may in a sense be 'friendly.' "   (p. 536.)

To invoke the action of a court the controversy must arise out of the real facts in the case, and not upon an abstract question.  It is the opinion of the court that the pleadings and evidence show that no situation has yet arisen requiring the bank commissioner to take action under the guaranty law with respect to any national bank.  Until such a situation arises there is nothing upon which the court can act.  The state officers and other interested parties may hold different opinions as to the meaning and effect of the guaranty law, but the court can not undertake to interpret a statute merely because there is a difference of opinion as to its construction.  As we read the record, no national bank has asked to be admitted to the benefits of the guaranty fund.  The mere want of a formal demand would be unimportant if it were shown that some national bank actually desired admission and was now seeking it, but this is not the case.  There is a suggestion that national banks have been deterred from making application by reason of the announcement of the bank commissioner that he would refuse to entertain it. The evidence, however, does not appear to bear out that view.  National banks that have shown an inclination to participate in the guaranty fund appear to have refrained from taking preliminary steps to that end, not because of the refusal of the state officers to receive them, but because the federal officers, charged with the administration of the national banking act, in effect forbid them to do so.  The court can require of the bank commissioner only that he perform some specific act, and until some national bank invokes the benefit of the guaranty law there is no duty for him to perform in that connection.  No national bank has yet done so,

and from the attitude of the federal officers it seems probable that none will do so. In that case there is no occasion for a court to decide what the duties of the bank commissioner would be should such an application be made.

The writ is therefore denied.

JOHNSTON, C. J. (dissenting) : In my view the evidence in the case warrants the court in taking up and deciding the disputed questions as to the validity and proper interpretation of the guaranty act. It appears to me to be a real and not a simulated controversy. The enactment of an important statute is frequently followed by differences of opinion among those directly interested, as to its constitutionality and meaning, and one of the recognized methods of settling these differences is a test suit brought in the name of the state against the officer having charge of its enforcement. Such an action may be amicable without being fictitious, and many actions having a similar basis to this one as to the character of the controversy have been considered and determined in this court. In this proceeding the attorney-general, representing the public, insisted that the guaranty act applied to the national banks of the state and was not invalid for that reason, while the bank commissioner, who based his rulings on the decisions of the federal officers, announced that he would not admit them to the benefits of the act, and in the case of the Commercial National Bank of Alma he said that his refusal was official. It is true there was no formal demand by a national bank and a specific refusal of such demand, but it is clear that such a demand would have been unavailing. Possibly there would have been stronger reasons to insist on this if a particular bank had brought the action to compel admission than in a case like this, where it is brought by the attorney-general in the name of the state. But in my opinion a situation had arisen which justified an action

by the state. The bank commissioner had corresponded with most of the national banks of the state, had had direct communications and consultations with fifty or sixty of them, including a conference with the officers and stockholders of a certain bank where its admission to the guaranty fund was the principal subject of discussion. The response of the bank commissioner to all of them was that national banks would not be admitted. A specific demand is not always necessary in order to maintain mandamus. In *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, it was said:

"In a proceeding of mandamus, to compel the performance of a public duty, no formal demand upon the defendants is necessary where their course and conduct manifest a settled purpose not to perform the duty, and where it clearly appears that a formal demand would be useless and unavailing." (Syllabus.)

So here the settled purpose of the bank commissioner not to admit national banks made it unnecessary for the attorney-general, representing the public, to go through the formality of asking that the Commercial National Bank of Alma or any other national bank should be admitted to the guaranty fund in order to furnish a basis for an action.

I am authorized to say that Mr. Justice BENSON concurs in this dissent.